HENDERSON v. WRIGHT. See Case No. 16,777.

HENDERSON (YEATMAN v.). See Case No. 18,132.

HENDERSON'S Case. See Case No. 16,777.

HENDRIC (UNITED STATES v.). See Cases Nos. 15,346 and 15,347.

━━━

## Case No. 6,355.

### The HENDRICK HUDSON.

[3 Ben. 419.][1]

District Court, S. D. New York. Oct., 1869.

JURISDICTION—SALVAGE—A FLOATING HOTEL—COSTS.

1. A steamboat had been dismantled, and stripped of her boiler, engine, and paddle-wheels, and fitted up as a saloon and hotel, and used as such for some months, and was being towed to another place, to be there used in a similar way, and, while so being towed, got ashore, and it was necessary to lighten her by pumping, and a steam propeller was employed for that purpose, whose owner afterwards filed a libel against the hulk, to recover compensation for such pumping, as a salvage service: *Held,* that the hulk was not, at the time, engaged in commerce and navigation, in such a sense as to be liable in rem, in admiralty.

[Approved in The Old Natchez, 9 Fed. 477. Cited in Cope v. Vallette Dry-Dock, 10 Fed. 145; S. C., 16 Fed. 925; Snyder v. A Floating Dry-Dock, 22 Fed. 686; The Pulaski, 33 Fed. 384; Ruddiman v. A Scow Platform, 38 Fed. 159; The City of Pittsburgh, 45 Fed. 702.]

2. Whether it would be liable for a tort or injury committed by it, quere.

3. The libel must be dismissed, for want of jurisdiction, without costs.

[Cited in Salvor Wrecking Co. v. Sectional Dock Co., Case No. 12,273.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

In admiralty.

Barney, Butler & Parsons, for libellants.
Beebe, Donohue & Cooke, for claimant.

BLATCHFORD, District Judge. The libel, in this case, is propounded as one of salvage, against the steamboat Hendrick Hudson, to recover the sum of $546, for services rendered by the steam propeller John Fuller, owned by the libellants, to the said steamboat, on the 20th of May, 1869, in pumping water out of her, and keeping her afloat, and towing her. The principal defence set up in the answer is, that the thing proceeded against was, at the time the service was rendered, and at the time of its seizure under the process in this suit, a hulk, without motive power, not used in commerce in any manner, but used as a hotel, at Polipel's island, in the Hudson river, opposite Newburgh, and that this court has no jurisdiction to proceed in rem against such hulk. The hulk had once been a steamboat, but was dismantled as such, and stripped of its boilers, and engine, and paddle-wheels, and purchased by the claimant. In that condition, it was taken from the city of New York to Saugerties, on the Hudson river, and there fitted up as a saloon and hotel. It remained at Saugerties during the winter of 1868, and until May, 1869, ashore, with the tide rising and falling in it. In May, 1869, the leaks in it were stopped sufficiently to enable it to be floated, and it was towed from Saugerties to Polipel's island by a tug-boat. While the tug-boat was endeavoring to put the hulk in the position in which its owner desired to have it, and before it reached such position, it struck the bottom, near the island, and became immovable. To move it farther, required that more floating power should be given to it, by overcoming, by pumping, the leaks through which the water entered it. For this purpose, the libellants were applied to, and their propeller, by pumping water out of the hulk faster than it came in, gave the hulk more floating power, and then, by pushing or pulling it, or both, moved it to a point designated by its owner, where it was suffered again to sink, and rest on the mud at the bottom, near the island. For this service to the hulk, the suit is brought.

Although this hulk or structure had been once a vessel, in the full sense of the term, and subject to the admiralty and maritime jurisdiction of the proper courts of the United States, and although its form and shape under water continued to be those of a vessel, yet I think that, in the actual circumstances of its physical existence, this court was and is without jurisdiction over it, in rem. in respect of the claim sued on in this suit. This hulk was not, in any proper sense, engaged in commerce or navigation. A floating house of religious worship, or a floating swimming bath. or a floating residence, could be towed, and, in such a sense, navigated, but such a structure would not be engaged in navigation, in such a sense as to be liable in rem, in the admiralty, for a service like the present one. The fact that the structure has the shape of a vessel, or had been once used as a vessel, or could, by proper appliances, be again used as such, cannot affect the question. The test is, the actual status of the structure, as being fairly engaged in commerce or navigation. A contract, claim, or service, to be cognizable in the admiralty, must be maritime, in such a sense that it concerns rights or duties appertaining to commerce or navigation. 1 Conk. Adm. 8; The Belfast, 7 Wall. [74 U. S.] 624, 637. Though the service in the present case was maritime in one sense, because the hulk was in the water, yet it was not maritime in such a sense as to bring the case within the admiralty and maritime jurisdiction of this court, under the grant of judicial power conferred on it by the ninth section of the act of September 24, 1789 (1 Stat. 76, 77), under the authority of the second section of the third article of the constitution. The service did not fairly and legitimately concern any right or duty which appertained to commerce or navigation, or to a structure engaged in commerce or navigation. Whether the structure in question would or would not be liable in rem, in the admiralty, for a tort or injury committed by it on navigable waters, depends on different considerations, and is not necessarily determined by holding it not to be liable in this suit.

The libel must be dismissed for want of jurisdiction, but without costs to the claimants. The McDonald [Case No. 8,756].