## Case No. 10,201.

### NEW YORK BALANCE DRY DOCK CO. v. HOWES et al.

[Affirming Case No. 10,202. Nowhere reported; opinion not now accessible.]

## Case No. 10,202.

### NEW YORK BALANCE DRY DOCK CO. v. HOWES et al.

### HOWES et al. v. NEW YORK BALANCE DRY DOCK CO.

[9 Ben. 232.] [1]

District Court, E. D. New York. Oct., 1877. [2]

DOCKAGE—CONTRACT—PERFORMANCE.

1. A dry-dock company contracted to raise and dock a vessel for $150; but on beginning the work a bulkhead of the dock burst, and the vessel had to wait till the dock was repaired. The vessel was then successfully raised, and her repairs completed. The company asked $250, as on a new contract, and brought suit. The owners of the vessel also brought an action, claiming damages of the dock company for delay in performance of the contract to raise the vessel. Held, that the dry-dock company could only recover $150, the amount originally named, as it appeared that no new contract had been made, nor had the old contract been abandoned.

[Cited in Norwich & N. Y. Transp. Co. v. New York Balance Dock Co., 22 Fed. 674.]

2. The owners of the vessel could not recover for delay. The breaking of the dock was a temporary destruction of the thing in reference to which the contract was made, and furnished a legal excuse for the delay, unless it appear that the obstruction was allowed to continue an unreasonable time or that the breaking was caused by negligence.

In admiralty.

Owen & Gray, for Dock Co.
Taylor & Fowler, for Howes et al.

BENEDICT, District Judge. These two actions have been tried together. The facts out of which they arose are as follows: Prior to May 2d, 1877, an agreement was made between the New York Balance Dry Dock Company and the owners of the steamer Erickson, whereby the dock company agreed, for a consideration of $150, to raise the steamer Erickson upon their dock for the purpose of enabling her there to receive some repairs. On the morning of the 2d of May the raising of the steamer upon the dock

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case unreported.]

was commenced, but before it was completed one of the bulkheads in the bottom of the dock burst by reason of the pressure of the water, and it became necessary to lower the dock and remove the steamer until the break could be repaired. The dock was accordingly lowered and the steamer removed on the afternoon of the same day on which she went on. The next morning the dock was repaired, and on the evening of that day the steamer was again taken upon the dock and successfully raised.

Out of this state of facts these two suits have arisen, the first being brought to recover of the owners of the steamer two hundred and fifty dollars, as being a reasonable sum to be paid for raising this vessel; the second being brought by the owners of the steamer to recover of the dock company damages for their failure to raise the steamer according to the contract.

In regard to the claim of the dock company, I am of the opinion that they are entitled to recover $150 and no more. The evidence shows that the original contract was not rescinded and that the work done was in performance of the contract made. The agent of the steamer says that when the steamer was taken off the dock because of the accident, he gave notice that she must be allowed to go back in her turn. When the injury was repaired she claimed the right to be put on the dock in preference to another vessel then waiting, and the preference was accorded to her. And when the work was done, the dock company rendered a bill for $150 for raising vessel "as per agreement." Upon these facts it must be held that the raising of the vessel was in pursuance of the contract, and consequently the recovery must be limited to the contract price.

An effort was made to show that the agreement was to raise the vessel light for $150, and that when raised she was partly loaded, and the raising in that condition worth more. But the price was fixed at $150 to raise the vessel as she was. All vessels have some cargo or ballast. No objection to the cargo in the vessel was made at the time she was tendered, and when the work was completed the bill rendered was for the contract price. It is plain, therefore, that the contract price must determine the amount of the recovery.

The second action raises the question whether the delay in raising the steamer, occasioned by the bursting of the bulkhead, gives to the owners of the steamer a right of action for the damages caused by such delay. This cause of action is not affected by the fact that the dock company was allowed to proceed with and complete its contract to raise the ship. Whether such a cause of action would have arisen if the failure to raise the vessel on the first attempt had been treated as an absolute failure on the part of the dock company to accomplish their undertaking need not be considered, for both parties treated the failure as temporary. Both knew that the vessel could be raised as soon as the dock should be repaired, and when the dock was repaired the owners of the steamer claimed the right to have her then raised under the contract, to which the dock company assented, and thereupon proceeded to complete their contract.

The case is therefore one of delay in performance caused by a defect in the dock. I entertain no doubt that the principles applicable to this case are those governing contracts dependent upon the continued existence of a given thing, for it is apparent that it was the use of this balance dock that was contracted for, and it was never supposed by either party that any other dock could be resorted to in fulfilment of the contract. So the answer of the ship-owners expressly admits that they employed the dock company to raise the steamer upon their dock. In this class of contracts performance is excused by the destruction of the thing upon the existence of which the contract is based. In this instance, when the bulkhead of the dock burst, the performance of the contract became physically impossible until the dock should be repaired, and pending such repairs the dock did not exist as such. This temporary destruction of the thing in reference to which the contract was made furnished a legal excuse for the delay that ensued, unless it appears that the obstruction was allowed to continue an unreasonable time or it be shown that negligence was the cause of the accident.

It is contended on the part of the steamer that although it be shown that the defect that caused the bulkhead to give away was unknown to the dock company, and could not have been discovered by any amount of care, nevertheless the dock company is liable because the delay arose from weakness in the dock and not from any unexpected event. The circumstance of the bursting under ordinary pressure is said to furnish conclusive proof of insufficiency, rendering the company liable. The bursting of the bulkhead may prove insufficiency in the dock, but it does not prove negligence on the part of the dock company. Here the evidence is that the dock on many previous occasions had proved sufficient, that it was kept under careful supervision, that upon examination the bulkhead disclosed no sign of weakness, and that there was nothing to lead one to suppose that the bulkhead would not raise this vessel as it had often done larger ones.

Delay in raising the libellant's vessel beyond the ordinary time required, arising under such circumstances by reason of the occurrence of an unforeseen event, against which care and diligence afforded no protection, does not give a right of action when there was no stipulation as to time in the contract.

The libel of Osborn Howes must, therefore, be dismissed with costs.

[On appeal to the circuit court the decree of this court was affirmed. Case unreported.]