### THE OLD NATCHEZ.

#### (*Circuit Court, S. D. Mississippi.* 1881.)

Decision of the district court, *ante,* 476, affirmed.

In Admiralty. On appeal.

PARDEE, C. J. In the summer of 1879 the steam-boat Natchez was taken to Cincinnati, Ohio, and dismantled, and stripped of her boilers, engines, and paddle-wheels. Her cabin was stripped of its furniture, her smoke-stacks were taken down, and everything that could be made available in the construction of a new steam-boat was taken off. There remained of the old boat the hull, the cabin, the texas, the hog-chains, running from stem to stern, the fore and aft capstans, the stair steps leading from the lower to the boiler decks, her boiler deck, and hurricane roof. She was without motive power of any kind, and remained moored at Cincinnati until the fall of 1880, when she was purchased by the Vicksburgh Wharf & Land Company, and then towed to Vicksburgh, in this state, and moored to a landing

about half a mile from the city. Carpenters were put to work on her, changing her decks, erecting a cargo-box, and otherwise remodelling and preparing her for a wharf-boat. These repairs had not been completed on her, and she was engaged in no manner in commerce or navigation, when in the night-time of July 19, 1881, the libellant discovered her to be on fire, with her watchman on board and asleep, and no other assistance at hand. By the efforts of libellant the hull or hulk, or barge or wharf-boat, was saved. At this time there was, in the interest of claimants, insurance to the amount of $5,000 "on the hull, cargo-box, tackle, and apparel of their wharf-boat Natchez, lying at," etc., conceded to be the same hull or hulk, or wharf-boat, saved by libellant and libelled herein.

The claimant resists the claim for salvage on the ground that the court is without jurisdiction because the Natchez was a mere hulk, without motive power of any kind, and was not engaged in commerce or navigation, and was destined for a wharf-boat. The district court maintained jurisdiction and allowed salvage on the ground that the Natchez was a floating boat or vessel on a navigable stream, fitted for a wharf-boat, and, as such, intended to aid commerce and navigation, and supported the decision with the case of *The Cheeseman* v. *Two Ferry-boats*, 2 Bond, 363. The claimant relies in this court on the case of *The Hendrick Hudson*, 3 Ben. 419, and makes the argument that at the time the alleged salvage services were rendered the Natchez was not engaged in aiding commerce or navigation, and at that time, or as a wharf-boat, she was not subject to any maritime liens or responsibilities.

The facts of *The Hendrick Hudson* are entirely different from the facts of this case. The Hendrick Hudson was aground, destined to continue so, and she had been converted into and used as a "saloon and hotel," and she was only to be floated so as to reach a more eligible location. She was no more subject to admiralty jurisdiction than would be a hotel on a wharf.

The reasoning in the case of *The Cheeseman* fully sustains the judgment of the district court in this case, and, were it necessary, I might be willing to wholly base my judgment on the same ground. But it is not necessary, as the agreed facts in this case, as I have recited them, show that no matter what may have been the intention of her owners as to future use, the dismantled Natchez still retained all the characteristics and distinctive features of a water-craft, capable of being used in commerce and navigation, and she was afloat on waters over which the courts of the United States have admiralty

jurisdiction. As such water craft she was insured by her owners. As a barge or lighter she may be in use to-day. As such water-craft she could be in impending peril on a public, navigable river, and could be rescued from such peril by maritime service.

Salvage is compensation for maritime services rendered in saving property or rescuing it from impending peril on the sea, or on a public navigable river or lake where interstate or foreign commerce is carried on. See Marvin, Salvage, § 97. Under this definition it will be noticed that the property saved need not have motive power, nor be engaged in commerce or navigation, to be subject to salvage. Nor do I see how the intended destination of the property can affect the question. Conceding that the actual use of the property may determine the right to salvage, as was decided in the *Hudson Case*, yet here the Natchez was not yet used as a wharf-boat, but stood upon the same footing as any other barge moored to the bank of the river waiting to be loaded, towed away permanently, tied up, or broken up, as the business or interests of the owners might suggest or require. Whether a boat fitted, arranged, and actually used as a wharf-boat can be the recipient of maritime services in saving her from impending peril, so as to make her liable for salvage, it is not necessary to decide.

The argument made, that in the conceded condition and position of the Natchez she was not subject to maritime services, liens, and responsibilities, is not well supported. Under the law of Mississippi she could be the subject of liens which this court would recognize, and in proper cases enforce. See Code, Miss. § 1395. She could have been liable in cases of collision, and she was a subject for maritime contract as per insurance in this case.

In my judgment the decree of the district court in this case was correct, in maintaining jurisdiction and holding that libellant was entitled to salvage compensation. Let a decree be entered in this court in terms the same as was entered in the district court, with costs.