NORWICH & N. Y. TRANSP. CO. *v.* NEW YORK BALANCE DOCK CO.[1]

*(District Court, E. D. New York.   July 2, 1884.)*

1. NEGLIGENCE — RAISING VESSEL ON DRY-DOCK — APPROVAL OF BLOCKING —
   AGENT.
   The owners of a large steamer, who were making repairs on her, in the course
   of which they desired to put some bolts through her engine keelsons, applied
   to the owners of a floating dry-dock to take the steamer out of the water on
   their dock, on blocking high enough to allow of putting in bolts seven feet long
   without bending.   This was an extraordinary height to raise a vessel on such
   a dock.   The employes of the owners of the dock arranged the blocking, mak-
   ing a single tier of blocks, each pile of blocks being fastened together by iron
   dogs, and between some of the piles they put cross-braces.   The steamer was
   then taken on the dock and raised out of the water, but before the raising was
   complete the blocking gave way, the steamer falling backwards, and she was
   seriously injured.   *Held,* that the evidence did not show that the blocking was
   prepared according to the directions of the steamer's agent, but at most that it
   was approved as of sufficient height.

2. SAME—CONDITION OF VESSEL—NOTICE.
   That the fact that the steamer was in a condition needing repair was not
   shown to have caused her fall; that the contract of the owner of such a dock
   is, in the absence of representation or special agreement, to raise the vessel as
   she is,—the care and skill required of him in each case depending on the con-
   dition of the vessel he undertakes to raise; that in this case there was no rep-
   resentation, and it was practicable to raise the steamer safely in her actual
   condition, and therefore, if her condition had caused her fall, the dock-owner
   would not thereby have been relieved from responsibility, because there was in

1 Reported by R. D. & Wyllys Benedict, of the New York bar.

the facts shown abundant ground to put the dock-owner on inquiry as to her condition, and therefore ignorance of her condition would have been negligence.

3. SAME—DEGREE OF RESPONSIBILITY OF OWNER OF DRY-DOCK.

That the nature of the employment of an owner of such a dock and the character of the service are abundant reason for holding him to a high degree of responsibility as regards the sufficiency and management of the dock; and that such responsibility must extend to a warranty of the sufficiency of the blocking which he employs.

4. SAME—FALL OF STEAM-BOAT ON DRY-DOCK—NEGLIGENCE—DAMAGES.

That even if the liability of the dock-owner was only for negligence, still he would be liable in this case, because the unusual height in this case required unusual care, and by cribbing the blocks instead of laying them single, (the method of cribbing blocks, though never resorted to on this dock for many years previous, being a method well known in raising vessels,) all danger of the steamer's fall would have been avoided, and the choosing the less safe of two methods for performing this work was negligence; that there having been a sag in the floor of the dock, by reason of which it retained a body of water some 15 or 20 inches deep at the deepest part, if, as it seemed it not unwarranted to infer, a jar sufficient to topple the steamer over was given to the dock by some movement of that body of water upon it, the dock-owner would be liable on account of the unsafe condition of the dock for raising this steamer as she was raised; that the dock-owner was liable for the damages sustained by the steamer.

In Admiralty.

*Bristow, Peet & Opdyke, (Robert D. Benedict,* of counsel,) for libelants.

*Owen & Gray, (William G. Choate,* of counsel,) for defendants.

BENEDICT, J.   This is an action to recover damages for injuries done to the steam-boat City of Boston while being raised by the defendants upon a balance dock.   The libel avers that on May 16, 1882, the defendants agreed with the libelants to receive the libelants' boat, the City of Boston, upon its balance dock, in the city of New York, and carefully raise her out of the water in such a way as to avoid injury to her, to retain her so raised until the libelants could do certain specified repairs upon her, and upon the completion of such repairs, and when so requested, to return the boat to the water; that in accordance with such contract the defendants received the boat from the libelants and commenced raising her upon the dock, but when the dock had risen almost to the surface of the water the boat fell from the blocks upon which she had been placed in the dock and received serious injuries.   These injuries the libel charges to have been caused by the defendants' negligence in the preparation of their dock, and in the raising of the boat, and by their failure to properly perform their contract.   The answer admits an agreement to raise the boat, but leaves the terms of the agreement to be proved by the libelants.   It also admits receiving the boat from the libelants, and that while being raised upon the dock she fell.   It avers that the defendants prepared the dock according to the instructions of the libelants; that such preparation was done carefully and skillfully, and was approved by the libelants, and that the dock so prepared was approved by the libelants.   It also avers that the boat was in an un-

fit condition for raising, of which the defendants were ignorant, and it charges that the fall of the boat was caused by the carelessness, negligence, and interference of the libelants, and the unfit condition of the boat, and not by any negligence or want of care on the part of the defendants. Upon these pleadings the point has been taken that they leave the defendants without a defense, because they admit a contract to raise the boat and a failure to perform that agreement. This point will, however, be passed, and the case determined on the facts disclosed by the testimony. In so considering the case, it will be convenient first to dispose of the issue raised by the averment of the answer, that the blocking upon which the boat was resting when she fell was prepared according to the direction of the libelants, and was accepted by the libelants as satisfactory. This averment *is not* sustained by the testimony. The most that can be said is that the blocking was approved as sufficient in height to give the boat the required elevation above the floor of the dock. Upon the evidence the libelants are in no way responsible for the means which the defendants adopted to give the boat the requisite elevation from the floor of the dock.

Next will be considered the issue raised by the averment of the answer, that the condition of the boat rendered her unfit for raising, and that the fall of the boat was a result of that condition. The evidence fails to show that the fall of the boat was caused by her condition. Nor would it avail the defendants to hold that it was so caused. Dry-docks are, in general, not employed for the purpose of raising vessels of sound condition. Vessels loaded and light, broken and sound, water-logged vessels, hogged vessels, vessels out of shape from stranding, vessels too old and weak to run longer without repairs, are the vessels requiring the services of a dry-dock; and, as was said on a former occasion, (*Howes* v. *Balance Dock*, 9 Ben. 232,) the contract of the dock-owner is, in the absence of representation or special agreement, to raise the vessel *as she is;* the care and skill required of him in each case depending upon the condition of the vessel he undertakes to raise. In this case no representation by the libelants, respecting the condition of the boat, is claimed to have been made. Nor is it contended that it was impracticable to raise the boat safely in the condition she was. If, then, it had been shown that the condition of the boat rendered her fall inevitable, blocked as she was, it is not seen how the defendants' liability for the injuries resulting from the fall could be disputed. Nor, if such were the case, would it avail the dock-owners to hold that they were ignorant of the condition of the boat. The boat was dismantled. Her walking-beam was out, much of her engine was out of position, and the known object of having her raised upon the dock was to bolt down her engine keelsons. In these and other circumstances there was abundant cause to put the dock-owners upon inquiry as to the boat's condition. A failure by the defendants, under such circumstances, to be informed in regard to the actual con-

dition of the boat does not constitute a defense. Ignorance under such circumstances was itself negligence.

Passing now to consider the testimony offered in support of the averments of the libel, I find it proved that the libelants applied to the defendants to raise the City of Boston out of water upon the defendants' balance dock, the boat to be sufficiently elevated above the floor of the dock to enable bolts seven feet long to be passed up through the bottom and the engine keelsons without being bent. The defendants agreed so to raise the boat, and in pursuance of such agreement proceeded to construct upon the floor of the dock the blocking upon which the boat's keel was to rest when raised. The elevation of the boat from the floor of the dock, called for by the contract, was unusual. No boat of the size of the City of Boston had ever before been blocked to such a height upon this, nor, so far as appears, upon any other floating dock. Two methods of constructing this blocking were open to be adopted: one by placing single blocks of timber one upon the other till the requisite height should be reached; the other to arrange the blocks of timber crib fashion. Cribbing the blocks is a method well known, and often employed in constructing blocking for vessels. By adopting it, all danger of falling is avoided. This method had never, previous to the fall of the City of Boston, been employed on the defendants' dock, where many vessels have been raised in safety without cribbing.

After the City of Boston fell she was raised by the defendants upon the dock with the blocks fore and aft cribbed, and then she was raised in safety. When the first attempt to raise her was made, however, the blocks were not cribbed, but placed one upon the other single until the requisite height was reached. The blocks were then dogged together, and between some of the piles of blocks at each end, and also between an uncertain number of the piles in the center, cross-braces of spruce plank were placed, running from the foot of one pile to near the top of the next. The blocking having been thus prepared by the defendants and the dock lowered, the boat was taken by the defendants into their possession and placed in position in the dock, and the work of raising her, by pumping out the water from the sections of the dock, begun. As the dock rose the keel of the boat took the blocking over which it had been placed, and thereafter as the dock rose the boat rose until the keel was four or five feet out of the water, when the boat and blocking on which it was resting toppled over backwards, and the boat fell heavily upon the floor of the dock.

These facts are not in dispute, and it is contended by the libelants that they afford ground for a decree against the defendants for failure to discharge the obligations assumed in making the contract stated. The question thus presented is novel. Adjudged cases where courts have been called on to consider the obligations assumed by the owner of a dry-dock who undertakes to raise a vessel upon his dock are rare, and no case has been referred to on this occasion which can be fairly

claimed to furnish authority for a decision of the case at bar. The extent of the responsibility assumed by the defendants when they undertook to raise the libelants' vessel upon their dock must therefore be ascertained by a due consideration of the character of the employment, and the legal relation of the contracting parties naturally and justly resulting therefrom.

If it is true—and the fact is not easy to deny, upon the evidence—that the libelants' vessel when injured was within the exclusive control of the defendants, and had been placed in the defendants' exclusive possession to enable the defendants to perform their agreement to raise the boat, there might, as it seems to me, be difficulty in finding ground upon which to base a sound distinction between the obligations assumed by the defendants and those of a carrier in respect to goods intrusted to him to be carried. But assuming in favor of the defendants that all the reasons upon which the liability of a carrier of goods is supposed to rest do not exist in the case of a dry-dock owner having possession of a vessel intrusted to him for the purpose of being raised, still there is, as it seems to me, abundant reason to be found in the nature of the employment and the character of the service for holding the dry-dock owner to a high degree of responsibility as regards the sufficiency and management of his docks. The service to be rendered relates to property peculiarly situated, namely, vessels constructed for the purpose of floating upon the water, and, as already remarked, either weakened by age or accident, or from some other cause requiring instant repair upon the land; and, while it cannot be said that the dock-owner possesses a franchise, yet by reason of the cost of constructing and erecting a structure like a dry-dock, the location necessary for the use, and the character of the service to be rendered, the dry-dock owner has what is nearly, if not quite, equivalent to an exclusive privilege. A refusal of employment made by a dry-dock owner, without cause, would, in the majority of cases, work irreparable injury, and be unjustifiable. Moreover, docks of this character, when employed, must always be operated by those who own them. The conditions and capacity of the dock are unknown except to the owner. In general, the employment of the dock is compelled by necessity, and must be contracted for by the master of the ship in the absence of the ship-owner, who is forced by circumstances to intrust his vessel, greater in value it may be than the dock, upon a structure, the condition of which is necessarily unknown to him, or to his agent, the ship-master, and which is to be operated by persons whose character and skill are likewise unknown, and where a slight relaxation of care or a defect of skill may result in a fatal straining of his ship, or, as here, in a serious fall.

The employment of the dry-dock owner is therefore of necessity confidential. It is in a substantial sense a public employment, and while it may be that due protection of the public can be secured without attaching to this employment those several obligations which the law

has found it necessary to attach to the employment of a carrier of goods, I have no hesitation in saying that public policy requires that to this employment a high degree of responsibility must be attached by the law. Within the range of that responsibility it seems entirely reasonable to bring the sufficiency of the blocking upon which the vessel rests for support when raised from the water by the dock; for blocking sufficient to bear up the vessel is a necessity of the undertaking. It must be and is prepared by the dock-owner. What blocking will be sufficient to support a particular vessel upon a particular dock comes within the experience of the owner of the dock, and is not within the ordinary experience of the owner of the ship. The dock-owner, and he only, can know the action of his dock when rising under the burden of a given ship. The obligation to provide a sufficient blocking is therefore an obligation naturally attaching to the dock-owner, and with reason and justice may be held to be one of the implied obligations assumed by a dock-owner when he agrees to raise a ship.

It will be observed that the case here is not that of the giving way of the blocking through some latent defect. The boat did not fall because the blocking under her gave way by reason of some latent defects in the blocks, but because the method adopted by the defendants in building up the blocks rendered the blocking unstable and insufficient when subjected to the weight of the boat, and the movement necessarily incident to the raising of the dock. Such, at any rate, was the fact, if, as the defendants contend, the dock was raised evenly, and no motion imparted to the vessel. The case, therefore, in this aspect is one of damages resulting from the use of blocking which proved insufficient for the purpose to which it was applied; and if I am right in the opinion that the defendants warranted the blocking as sufficient to support the ship, liability for the damages resulting follows, of course. In support of this conclusion reference may be made to the somewhat analogous case of a carriage being transported on a ferry-boat, and damaged because of a defective chain placed behind it to prevent its running off the boat. In such a case the ferry-master, although held not to be a common carrier, was held responsible for the damages resulting from the employment of defective iron in a link of the chain. *Clark* v. *Union Ferry Co.* 35 N. Y. 485; *Wyckoff* v. *Queens Co. Ferry Co.* 52 N. Y. 32. So, in the case of *Cook* v. *Floating Dry-dock*, 1 Hilt. 436, the dock-owner was held chargeable with the obligation to make the stanchions of the dock sufficiently strong to support a stage, and liable for damages arising from insufficiency of the stanchions; such liability being there placed upon the ground of a warranty against all such faults and defects as would render the contemplated use of the dock dangerous. That the defendants' dock was defective in the blocking, and dangerous to be used as it was used because of that defect, is shown by the result.

The decision of this court in *Howes* v. *Balance Dock*, 9 Ben. 232,

has been cited by the defendants as inconsistent with such a conclusion as above stated. But in the case referred to the question was one of delay in carrying out a contract to raise a vessel, and the question of warranty did not arise. If, however, any inference is to be drawn from the decision in that case, it seems adverse to the defendants here. In opposition to this view it is contended in behalf of the defendants that there is no bailment in the case; that the liability of a dock-owner for injuries sustained by a vessel while being raised, always depends upon the question of negligence, and the defendants cannot be held responsible for the injuries to the libelants' boat, because it has not been proved that the fall of the boat was caused by the defendants' negligence. If this be the law of the case, still the decision must in my opinion be adverse to the defendants.

As already remarked, the work undertaken by the defendants was attended with unusual risk of the vessel's falling, owing to the elevation of the vessel's keel from the floor of the dock at which, according to the agreement, the boat was to be placed. The care demanded in constructing the blocking is to be measured by the risk of the falling involved in the operation as it was to be conducted, taken in connection with the character and value of the property to be subjected to danger. It is, therefore, not too much to say that it was incumbent upon the defendants to employ all means at command to reduce that risk to the minimum, and failure in this respect was negligence. Means were at hand by which to remove all danger of the vessel's falling. To secure absolute safety it was only necessary to crib the blocks. This method of avoiding danger of a fall was well known in connection with the raising of vessels, and the fact that this method had never been resorted to in this dock during many years prior to the fall of the City of Boston does not prove the expedient to be unavailable or unnecessary, for no such vessel as the City of Boston was ever thus raised at such an elevation from the dock, while the other fact, that cribbing was employed when the City of Boston was next raised immediately after the fall, goes far to prove the necessity, as well as the reasonableness, of the precaution in question. Instead of adopting this precaution, known to be sufficient to remove all danger of falling, the defendants adopted a method of arranging the blocks necessarily involving a risk of the vessel's falling, and endeavored to diminish the risk by dogging the blocks piled single, and, for the first time in the use of this dock, by putting braces between the blocking. So far as the evidence discloses, the decision to pile the blocks single was not arrived at because of any difficulty or expense attendant upon cribbing the blocks, nor because single blocking, secured by dogs and braces, was supposed to be more secure than cribbing. The only reason for the course pursued, suggested to me by the testimony, is that cribbing would require a greater number of blocks than those at hand. But, whether impelled by this reason or some better one, the fact remains that between two methods of constructing the block-

ing open to be adopted, the defendants chose the one involving risk, as against one that would have involved no risk. This was negligence, and the negligence that caused the disaster.

But it is said the defendants judged the blocking, as constructed, to be sufficient, and the reasonableness of this conclusion is confirmed, it is said, by many experts who have testified here that they would have judged the blocking, as constructed, to be safe. The liability of the defendants does not, however, depend upon the question whether the error of judgment which they committed was committed in good faith, but whether they were justified in committing that error under the circumstances as they were. Without sufficient cause they made the safety of the libelants' vessel while on the dock, and the safety of the lives of the men who were to be put to work under her, depend upon the soundness of their judgment in regard to the sufficiency of blocking, up to that time untried in similar circumstances, when there was open a method well known to them, although not employed by them, as to the safety of which there could be no question whatever. To commit such an error under such circumstances was culpable, and renders the defendants guilty of negligence. The books contain many cases where the selection of the most dangerous of two methods has been held to be negligence. I recollect none where the choice made seems to me more indefensible than the choice made by the defendants on this occasion.

In the case of *The Louisiana*, 3 Wall. 173, a ship which broke from her moorings was prosecuted for damages caused by her drifting upon another vessel, and there the supreme court of the United States held that to escape conviction of negligence it was incumbent on the defense to show an accident which human skill and precaution, and a proper display of nautical skill, could not have prevented; and expressly declared that belief in the sufficiency of the ship's fastening was no defense. In the case at bar there was no accident. According to the contention of the defendants, nothing unforeseen or unexpected occurred in the management of the dock during the raising of the boat, save only the boat's fall, and that, as all concede, would not have occurred if the blocks placed under the boat had been cribbed instead of piled single. Judged according to the principle applied by the supreme court in the case of *The Louisiana*, I do not see how the defendants can escape liability for the injuries in question, even if the extent of the obligation resting upon them was to raise the vessel without negligence.

There is still another aspect to the case deserving of notice. It is proved and not denied that by reason of a sag in the dock, the dock, when raised, retained a very considerable body of water upon its floor, some 15 or 20 inches deep in the deepest part, and there is evidence tending to show that motion was imparted to this water upon the floor during the raising of the City of Boston. I do not think the inference unwarranted that a jar was given to the dock sufficient to top-

ple the boat over, as she was blocked, by some movement of the water upon the floor of the dock. If this inference be correct, the liability of the defendants must follow, upon the ground that the condition of the dock, by reason of the presence of this body of water, was not safe for raising such a vessel as the City of Boston, when elevated as she was from the floor of the dock. I am content, however, to rest my decision of this case upon the other grounds above stated, and upon these grounds I must hold that the libelants are entitled to a decree.