## RUDDIMAN v. A SCOW PLATFORM.[1]

*(District Court, S. D. New York.    March 30, 1889.)*

WHARFAGE—LIEN—FLOATING SCOW-PLATFORM.
  A floating structure, designed to be moored along-side a wharf, so that
  carts containing refuse to be dumped into boats, can be driven over it from
  the wharf, is not a vessel within the meaning of the maritime law, and no
  lien for wharfage attaches to it under that law

In Admiralty.    Action for wharfage.
*James R. Angel,* for libelant.
*Wilcox, Adams & Macklin,* for respondent.

BROWN, J.    The libelant sues for wharfage of a scow platform along-side
his dock walk, at One Hundred and Thirty-Eighth street, Harlem river,
from November, 1886, to November, 1887.    No lien under the state law
can be claimed, as no specification of claim has been filed, and more than
a year has elapsed.    To admit of a maritime lien, the scow structure must
be a "vessel," within the meaning of the maritime law.    I am of opinion
that the structure in question, though afloat, is not such a vessel, because
it was not designed or used for the purpose of navigation, nor engaged in
the uses of commerce, nor in the transportation of persons or cargo; and
to be a "vessel" it must meet some of these tests.    The structure in
question consisted of a box, about 35 or 40 feet square, having one or
two tons of stones in the bottom to keep it from tipping over, with a
thin floor over the box about 3½ feet above the water-line, on the top
of which is a frame-work supporting a strong upper floor about 10 feet
above, with a projecting gangway at the top.    It was designed to be
moored along-side a wharf, so that horses with carts could be driven over
it from the wharf, with dirt or other refuse to be dumped into boats
lying along-side.    This was its only use and design.    The structure
was mainly stationary, and rarely moved.    But it was capable of be-
ing towed from one wharf to another, though not without some diffi-
culty, from its clumsy structure; and but few wharves were adapted to
its use.    It had no motive power, no rudder, no sails.    The case ap-
proaches, doubtless, that of *The Hezekiah Baldwin,*—a floating elevator,—
which was held to be a vessel.    8 Ben. 556.    But in that case not only
was the structure designed for the uses of commerce, but it was her con-
stant business to move from place to place, as a vessel, in her peculiar
work; in both respects differing from the present case.    This structure,
though, as I have said, capable of being moved, was designed to be com-
paratively permanent.    By its nature, build, design, and use, it belonged,
I think, to that considerable class of cases, such as dry-docks, floating
saloons, bath-houses, floating bethels, floating boat-houses, and floating

─────────────
[1] Reported by Edward G. Benedict, Esq., of the New York bar.

bridges, all of which have been held not to be vessels within the maritime law. *Cope* v. *Vallette Dry-Dock Co.*, 119 U. S. 625, 7 Sup. Ct. Rep. 336, 10 Fed. Rep. 142; *Woodruff* v. *One Covered Scow*, 30 Fed. Rep. 269; *Tome* v. *Four Cribs of Lumber*, Tancy, 533; *The Hendrick Hudson*, 3 Ben. 419; *Snyder* v. *A Floating Dry-Dock*, 22 Fed. Rep. 685; *Jones* v. *Coal Barges*, 3 Wall. Jr. 53; *Disbrow* v. *The Walsh Bros.*, 36 Fed. Rep. 607.    The libel is dismissed, but, in default of jurisdiction, without costs.