DAILEY v. CITY OF NEW YORK et al.

(District Court, S. D. New York. March 2, 1904.)

1. ADMIRALTY JURISDICTION—MARITIME TORTS—PLACE OF INJURY.

The city of New York was engaged in filling up Riker's Island in East River, embankments and cribwork having been constructed around the outside, leaving a gap through which the tide ebbed and flowed, and through which tugs and scows passed into the interior, carrying material for filling. A scow, having been so towed in, was left until the tide ebbed, when she settled on a projection in the bottom and was injured. *Held*, that the injury occurred in navigable water, and that an action to recover damages therefor was within the jurisdiction of a court of admiralty.

2. SAME—BREACH OF MARITIME CONTRACT.

A suit to recover for an injury to a scow from a charterer, whose duty it was to exercise ordinary care to return her to the owner in good condition, arises out of a maritime contract, and is within the admiralty jurisdiction, irrespective of the place of the injury.

3. SHIPPING—LIABILITY OF CHARTERER FOR INJURY OF SCOW—NEGLIGENCE.

Libelant hired a scow to the city to be employed in carrying material for filling in a submerged island. After being towed by a tug to the place where it was desired to unload her, the tide receding, she settled on a projection on the bottom and was injured. *Held*, that the injury was due to negligence chargeable to the charterer, which directed the movement of the scow and selected the place where she was to lie for unloading, and not to the libelant, who, although knowing the general character of the work in which she was to be used, had no knowledge of the condition of the bottom, and no control over her movements.

In Admiralty. Action for injury to a scow while under charter.

Alexander & Ash, for libelant.

John J. Delany and E. Crosby Kindleberger, for city of New York. Hyland & Zabriskie, for Joseph Borro.

ADAMS, District Judge. The libellant, Margaret Dailey, in December, 1902, was the owner of the scow Bill, which she chartered to the city, for use in the department of Street Cleaning, for the purpose of transporting and removing ashes, street sweepings and refuse material. The charter was a verbal one, not for any specific period, and liable to be terminated at any time by either party. The scow's crew consisted of one man, whose duty it was to look after the owner's interest.

The city at the time was engaged in filling up Riker's Island, in the East River, and was delivering street sweepings etc. to the contractors employed in that work. The scow was loaded at a dump in the East River and towed to Riker's Island. On the 13th of December, she was towed, in connection with several other scows, through a gap left for the purpose, in the embankments and crib work, forming the outside of the island, by the tug Rescue, which was in the employ of the Moran Towing Line, and not in the employ of either of the respondents, so far as the evidence satisfactorily discloses. She was taken in at about high water. Upon the recession of the tide, she took the ground and lying upon a hump, which permitted her to

¶ 2. See Admiralty, vol. 1, Cent. Dig. § 154.

sag at each end, she was twisted and injured. The action was brought to recover the resulting damage, amounting, it is said, to $368.

On the trial, a question of jurisdiction was raised by the respondent Borro and joined in by the city, it being urged that admiralty could not take cognizance of the injury, because the accident did not happen on public navigable waters. Since the trial, the city has withdrawn any objection as to the jurisdiction, on the ground that the hiring of the scow was maritime in its character and would justify the exercise of the court's jurisdiction without regard to the question of the navigability of the waters. The point, however, is still insisted upon by the respondent Borro, who cites The Arkansas (D. C.) 17 Fed. 384, and Leovy v. United States, 177 U. S. 621, 20 Sup. Ct. 797, 44 L. Ed. 914. These authorities, however, do not sustain the contention that there was an absence of jurisdiction here.

The Arkansas was a case of collision, which happened during an extraordinary flood, between the respondents' steamer and a depot building, erected upon the bank of the Mississippi River. It was held, that there was no jurisdiction to compel the steamer to pay the damages, because the injury complained of was done to a land structure, though the vessel was floated there by the water. This is in conformity with the general principle that where an injury is done upon land, though it originated upon the water, the damage is not a subject of admiralty jurisdiction. The Plymouth, 3 Wall. 20, 18 L. Ed. 125; Homer Ramsdell Co. v. Comp. Gen. Trans., 182 U. S. 406, 411, 21 Sup. Ct. 831, 45 L. Ed. 1155.

Leovy v. United States, was a criminal prosecution for building a dam across an alleged navigable stream of the United States, under the Act of September 13, 1890, making it unlawful to build such structure upon any navigable waters of the United States, without the permission of the Secretary of War, which had not been obtained. Certain evidence as to the navigability of the waters in question, was submitted to the jury, which found that the waters were navigable.

The court said (page 627, 177 U. S., and page 799, 20 Sup. Ct., 44 L. Ed. 914):

"As respects navigation through Red Pass, there was some evidence, on the part of the government, that small luggers or yawls, chiefly used by fishermen to carry oysters to and from their beds, sometimes went through this pass; but it was not shown that passengers were ever carried through it, or that freight destined to any other State than Louisiana, or, indeed, destined for any market in Louisiana, was ever, much less habitually, carried through it.

"The evidence on the part of the defendants showed that for many years these crevasses or passes have been steadily growing shallower and narrower, and that at the time of closing Red Pass few of the smallest craft attempted to pass through it, and that the so-called mouth, or end of Red Pass next the Gulf, had closed up and become a mere marsh. The trifling use that was made of that pass was restricted to the river end of the crevasse."

It was held that the finding of the jury was not binding upon the court, as the evidence was inadequate to sustain it, and that the defendant should have been acquitted.

It is obvious that this authority does not touch the question under consideration, which involves one of jurisdiction in case of a marine tort.

The waters in this case, were the waters of the East River, and at the time of the accident were still subject to the ebb and flow of the tide. They were navigable in fact, at the time of this injury, although the work in progress tended to create land where the water originally prevailed. Vessels of various kinds, including steam tugs plied in and out of the enclosure, which remained open for the purpose of the ingress and egress of such vessels during the work, besides being for the larger part separated from regular navigable waters by crib work only. There cannot, in my judgment, be any doubt of the navigability of the water in question at the time of the accident. It is too well settled to admit of discussion, that the fact of the boat having taken ground, with the recession of the tide, does not oust the admiralty jurisdiction.

Jurisdiction is sustainable upon the ground, also, that a maritime duty was imposed upon the respondent by reason of the nature of the contracts, which related to a vessel and required her return to the owners. Jurisdiction attaches in case of a maritime contract, irrespective of the question whether it is to be performed on land or water. Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90; Wortman v. Griffith, 3 Blatchf. 528, Fed. Cas. No. 18,057; The Fifeshire (D. C.) 11 Fed. 743; The Vidal Sala (D. C.) 12 Fed. 207; Florez v. The Scotia (D. C.) 35 Fed. 916; The Ella (D. C.) 48 Fed. 569; Norwich & N. Y. Transp. Co. v. New York Balance Dock Co. (D. C.) 22 Fed. 672.

On the merits, the questions upon which liability turns are, (1) was the accident due to negligence and (2) if so, whose negligence was it. The libellant contends that both of the respondents are liable in such respects.

The city contends that the libellant was the negligent party, (a) in that by reason of doing work in the vicinity, she knew, or should have known, the condition of the place, and because the scow had been through the gap and her master had an opportunity to judge what the scow would encounter in delivering her load; (b) that, in any event, the city is not liable because if there were any negligence, it was the negligence of the respondent Borro, who would be required, under the analogy of the 59th Rule, to respond directly to the libellant for his damages.

The respondent Borro, makes a similar contention with respect to the negligence, if there were any, being the libellant's, and further urges that no negligence has been shown on his part, as he had no part in selecting the locality where the scow was injured but was merely employed to do the unloading.

The question is not without difficulty, and while numerous authorities have been cited, my attention has not been called to any case in point. It is quite evident that the principles which govern wharfage cases do not apply, because here there was no implied guaranty that the place where the boat was invited was safe for her to remain and negligence can not, in this case, be imputed by reason of such an accident happening. Nevertheless, the accident was due to negligence, because the hump of earth, or whatever the vessel rested upon, made the place unfit for the boat to lie upon while unloading.

I do not consider that the libellant should be held responsible in any way for what happened. She had no control over the scow, it being in charge of the city, which directed its movements. Moreover, neither the agents of the libellant, who were doing work in the vicinity, but on the outside of the crib work, nor the master on board, had any notice of the condition of the bottom where the scow was to lie, nor any reason to believe that it would be unsafe for a scow in her good condition.

The city's agents, however, should have known of the danger they were subjecting the scow to in sending her to the place she was made to lie, and it was sufficient to establish negligence against the city, under the circumstances of the work being in general charge of and done for its benefit. It is evident there would have been no difficulty in ascertaining the dangerous character of the place, which was such as to cause the scow to drop at both ends with the falling of the tide. The city was guilty of the sin of omission. Moreover, it was its primary duty, as bailee, to take ordinary care of the scow, so that she could be returned to the owner in the same condition as received, ordinary wear and tear excepted. The Barnstable, 181 U. S. 464, 468, 21 Sup. Ct. 684, 45 L. Ed. 963. The exercise of ordinary care would have prevented the vessel from receiving the injury from an obstruction on the bottom by which she sustained a dangerous twisting. The four other scows towed to the place, and lying near this one, two ahead and two astern, were not injured. The bottom was bare at low water and it is obvious that some examination of the place where she was to lie would have revealed its dangerous nature.

The remaining question is, was the respondent Borro responsible for or did he participate in the negligence. It appears that he was one of the contractors to fill in the island and was working independently of supervision by the city. He was apparently in charge of this part of the work and it was his duty to unload the scows. The libel alleges that he was at the time the "servant, agent and employee" of the city. This is denied by Borro. The proof does not show just what his relations were to the work. His legal connection with the work has not been made plain and I do not find sufficient testimony to establish a charge of negligence against him. The libellant urges that Borro being the employer of the tug which placed the scow, negligence can be imputed to him for what happened, but even such relation has not been established. Moreover, it does not certainly appear that the tug was in fault. There does not seem to be any doubt about the city's responsibility, especially in view of its relation to the scow, and I consider it more just to let damages rest with it, than to seek, through imperfect sources, for another party to be made liable, in whole or in part.

Decree for the libellant against the city, with an order of reference. Libel dismissed as to Borro.