## In re P. SANFORD ROSS, Inc.

### (District Court, E. D. New York. May 28, 1912.)

**1.** SHIPPING (§ 209*)—LIMITATION OF LIABILITY—TIME OF PROCEEDINGS.

    A vessel may be surrendered under the statute allowing a limitation of liability before or after a verdict settling the responsibility for the claim against which the limitation is sought, and, although a verdict may be recovered by the claimant in another court, the value of the vessel if limitation is allowed measures the amount of damages recoverable thereon.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

**2.** SHIPPING (§ 204*)—ADMIRALTY (§ 6*)—LIMITATION OF LIABILITY—"VESSEL"—PILE DRIVER.

    A barge with a pile driver mounted thereon and moved from place to place by tugs, which at the time of an injury to an employé working thereon was working in a tidewater stream, is a "vessel" subject to the admiralty jurisdiction, and within Rev. St. §§ 4283, 4289 (U. S. Comp. St. 1901, pp. 2943, 2945), giving the right to a limitation of liability without regard to the manner in which it was moored or the fact that at the time of the injury the tide was out and it rested on the bottom.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 639, 640; Dec. Dig. § 204;* Admiralty, Cent. Dig. §§ 86–98; Dec. Dig. § 6.*

    For other definitions, see Words and Phrases, vol. 8, pp. 7297–7301.]

**3.** SHIPPING (§ 205*)—LIMITATION OF LIABILITY—RIGHT TO LIMITATION.

    A corporation owner of a barge on which was mounted a pile driver, in the operation of which an employé was injured, is not chargeable with privity or knowledge which will deprive it of the right to a limitation of liability because the injury was due to the negligence of one of its agents or servants, nor because the act of negligence might have

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

occurred the same and with the same effect if the pile driver had been upon the land.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 639, 640; Dec. Dig. § 205.*

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

In Admiralty. On petition of P. Sanford Ross, Incorporated, for limitation of liability. Petition granted.

Everett, Clarke & Benedict, of New York City, for petitioner.
Martin T. Manton, of New York City, for claimant.

CHATFIELD, District Judge. A verdict has been recovered for $8,000 in an action brought by Ida Wenderlin, as administratrix, etc., of Frithof Wenderlin, deceased, who was killed upon a scow or barge owned by the petitioner herein, and upon which there was in operation at the time a pile driver of the usual form. This pile driver was moved around from place to place by tugs. At this time it was close to shore in shallow water, where the scow could be held by hawsers and moved about as was necessary, unless it rested upon the bottom at low tide.

The accident in question occurred upon the 27th day of July, 1909. The deceased was a laborer engaged at the time in holding in position the particular spile which was then being driven. He was using a handspike and was standing upon the lowest or deck platform of the scow. The piles were being driven across the channel but close to the bank in Flushing creek, which is tidewater at this point, and the verdict of the jury has fixed the responsibility of the defendant for negligence in the conduct of the work.

It appears that the verdict of $8,000 was more than the estimated value of the pile driver, and the petitioner, therefore, on the 27th day of June, 1911, surrendered the pile driver to this court in this proceeding. The pile driver was sold for the sum of $1,700, but it is now contended that this amount is less than the value which might have been obtained by an immediate surrender at the time of the accident. The testimony shows, however, that the ordinary depreciation for wear and age, even though lessened by the repairs which were actually placed upon the boat and superstructure during the intervening time, would equal any difference between the estimated sale value of the pile driver at the time of the accident and the amount actually realized upon the sale, and no evidence has been interposed to lead the court to the conclusion that in this proceeding the petitioners should be compelled to surrender more than the amount obtained.

So far as the right to surrender is concerned, the administratrix, who without objection proved a claim for the verdict obtained, now contends that this court has not jurisdiction, and that the petition should not be maintained under the statute. She asserts that the

pile driver was not at the time a vessel and was not in a navigable portion of the stream, that it was driving piles upon the shore and not in navigable water, and was either resting upon the bottom or attached to the bank by hawsers; so that it was merely such a structure as would have been erected along the shore and used as an ordinary pile driver upon tracks or staging and not upon a boat. The claimant therefore asks that the petition be dismissed and that the verdict be allowed to stand as a judgment against the petitioner, entirely apart from any admiralty jurisdiction.

[1] A vessel may be surrendered under the statute allowing limitation either before or after a verdict has been obtained settling the responsibility for the accident. City of Boston (D. C.) 159 Fed. 257; The Benefactor, 103 U. S. 239, 26 L. Ed. 351. If a verdict is recovered in an action in a state court or in a common-law action in a United States court, and if a right to limit all liability to the value of the craft upon which the accident occurred is given by act of Congress, then the right of trial by jury may be enjoyed by the plaintiff; but the collection of damages may be confined to the value of the vessel on which the liability occurred.

A proceeding to limit liability need not be affected by the form or the manner in which the liability is fixed. The statute of Congress was intended to and does allow a substitution of the res for the personal claim against the individual in certain kinds of cases, and no reason is shown why this should not apply to a cause of action in judgment as well as to a cause of action before trial.

[2] In the present instance the question is not whether the judgment can be avoided. That matter is res adjudicata, and the administratrix's right to her judgment has been established. But the case presents the question whether because of the place in which the accident occurred, and through prior lack of knowledge of the defective conditions, the owner of the vessel can avoid as great responsibility for the accident as would have rested upon him if the pile driver had been working upon staging attached to the shore.

Admiralty jurisdiction embraced the scow and the pile driver at the time. The place where she was resting was a part of the tidewater, and it is impossible to hold that a boat, moving or subject to the rise and fall of the tide, should be within the jurisdiction of the admiralty court when afloat, and out of its jurisdiction if it happens to ground or temporarily rest upon the bottom. Dailey v. City of New York (D. C.) 128 Fed. 796; Steamship Jefferson, 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907.

[2] Nor did the method of mooring alter the character of the structure. The accident did occur upon a boat; the proximate cause of the death was negligence in handling the boat, or in the method of construction of the boat's equipment, according to the finding of the jury; and while in this particular case hardship may result by reduction of the amount of recovery, nevertheless the court cannot limit the application of the statute and alter the principle, in order to except this particular accident from the legal principles covering

every accident of the same sort. If the verdict of the jury was based upon the failure to so move the pile driver as to bring the pile into a position under the hammer where it could withstand the blow, then, surely, the handling of the boat and the act of the foreman in managing the boat (while exactly similar, so far as the pile driver is concerned, to shifting its position upon a track) would still be an act done in connection with a craft or vessel subject to the admiralty jurisdiction.

If the accident occurred through failure to use a chock or block, whether permanent or temporary, in driving small spiles, nevertheless this was the act of the person managing the vessel, and no negligence or failure on the part of the owner has been shown, except through the acts of his servants; nor is there any suggestion that there was privity or knowledge on the part of the owner through carelessness in selecting this servant. The suggestion seems to be that the carelessness was in allowing the use of the pile driver without supplying chock blocks and ordering their use; that is, with respect to something which has nothing to do with navigation. But this is not the test, and an accident of the same sort might have happened at sea, if the pile driver or similar structure were upon the deck of a vessel. Nor can a corporation be held to have had knowledge of the defect or neglect because some one of its servants who is an agent or superintendent is guilty of negligence. The neglect must be such as would prevent the limitation of liability by an individual owner, and must also have been known to some one acting the part of owner for the corporation, not merely as servant in performing the work. The use of chock blocks was a temporary expedient which could be employed when the foreman thought it necessary; but for the owner to have affixed a permanent or stationary chock on the deck would have made it impossible to use the pile driver for large piles, and at any other staging would have prevented the further fall of the hammer.

The only remaining question is whether the scow was a "vessel" within the meaning of section 4283 of the Revised Statutes (U. S. Comp. St. 1901, p. 2943). The language of the section is that:

"The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, * * * incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

The purpose of the section was plainly to further the interests of the merchant marine and to establish a uniform rule of liability, which should not overwhelm merchants if a tremendous catastrophe should happen, as was always likely to occur at sea.

Since 1886, section 4289, R. S. (U. S. Comp. St. 1901, p. 2945), has applied the limitation of liability to all vessels used on lakes or rivers or in inland navigation, including canalboats, barges and lighters, thus extending the provisions of the law which previous to that time had limited it to seagoing vessels.

The necessity for determining whether or not the pile driver in question was a vessel within the contemplation of the statute raises the constitutional point which has been disposed of in the case of The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236, and The Troy, 208 U. S. 321, 28 Sup. Ct. 416, 52 L. Ed. 512. The Supreme Court therein holds that admiralty jurisdiction cannot be extended by the statutes of Congress over matters which are not within the constitutional grant to the United States of matters then within the meaning of the word "admiralty." Hence, as was decided by Judge Benedict, in the case of Woodruff v. One Covered Scow (D. C.) 30 Fed. 269, a floating boathouse, used merely as a storage room and as part of a dock, rising and falling with the tide, was not a vessel, even though the floating part was similar in construction to that of a scow.

A number of cases could be cited, but they are so comprehensively set forth in the case of Charles Barnes Co. v. One Dredge Boat (D. C.) 169 Fed. 895, that reference thereto is sufficient. In that case the court held that the word "vessel," when applied to a boat carrying a permanent cargo, such as a dredge, elevator structure, or pump, with the machinery and accessories, was within the jurisdiction of admiralty, and hence would come within the provisions of section 4283.

The decision in that case was with reference to a maritime lien and does not necessarily conclude the question as to limitation of liability. But in The Raithmoor (D. C.) 186 Fed. 849, the same principles have been applied with respect to the question of damages; and in the case of the O'Brien Bros., as owners of the Derrick Scow Sunbeam,[1] decided by the United States Circuit Court of Appeals for the Second Circuit, upon the 26th day of March, 1912, a scow capable of carrying a cargo, but not then in use for the carrying of cargo, and actually at the time having erected on it a derrick which was unloading a stone from another boat, was held within the limitation of liability statute.

There can be no doubt in the present case that the pile driver, when moving from place to place on the water, was a vessel just as much as she would be if carrying a load of tools and machinery and being towed by a tug around the harbor of New York, and the permanent attachment of the pile driver end of the engine to the scow does not of itself change the character of the boat.

On the other hand, as in the case of The Hendrick Hudson, Fed. Cas. No. 6,355, 3 Ben. 419, a vessel might cease to be navigable or to be employed in navigation, and hence lose the character of a maritime craft, even though her external form was not altered. In the case of The Hendrick Hudson, a boat permanently moored and used as a hotel or saloon was held not to be engaged in commerce by navigation. In the same way, if the pile driver in this case were permanently or temporarily taken away from its use as a scow, and the boat part of the structure were turned into a mere platform or support for the pile driver, although still remaining in the form of

[1] 195 Fed. 468.

a boat, no admiralty jurisdiction would remain, nor could the boat be a vessel within the meaning of section 4283.

It might happen that one pile should be driven with the use of a pile driver, entirely within the jurisdiction of admiralty and while the craft retained the character of a vessel, and that the next pile would have to be driven by running the boat out on shore upon ways, and thus turning her into nothing more than a pile driver upon a platform shaped like a boat, and hence beyond the jurisdiction of the admiralty court. The distinction would be similar to that made between the structure in the The Blackheath, supra, and that in The Troy, supra, where a distinct line was drawn between the two cases presented, and not because of any inherent difference in the location of the structures injured.

But to assume that the character of a vessel has been lost and that admiralty jurisdiction has been abandoned by allowing the boat to rest upon the bottom at low tide, or to become grounded temporarily, with the intention that it shall be navigated or towed before proceeding to the next position for driving a pile, is not sufficient to take away the navigable character of the craft, nor to sever it from admiralty jurisdiction.

The hardship in the present case is apparent. The petitioner should not be allowed to reduce the liability which the verdict of the jury has imposed upon it unless it comes strictly within the language of the section as interpreted by the courts; and in the absence of restrictive legislation it is impossible to relieve the hardship in this particular case, if the statute is to be applied impartially as it appears to the court.

The petition to limit the liability must be granted; but, under the circumstances, no costs will be allowed as against the fund.