## THE JIM AND BILL.

## THE ALEXANDER HAMILTON.

### No. 13485.

District Court, E. D. New York.
May 24, 1933.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for libelant.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for claimant.

CAMPBELL, District Judge.

This suit is brought to recover for damages alleged to have been caused to a moored boat by swells from the steamer Alexander Hamilton.

I find the facts as follows:

At all the times hereinafter mentioned and at the time of the trial, the libelant was the owner of the lighter Jim and Bill, which was up until the time of the happening hereinafter referred to tight, but moored in an unsatisfactory manner.

The steamer Alexander Hamilton was, during the currency of process herein, within this district and the jurisdiction of this court.

On September 3, 1932, at about 8:45 o'clock p. m., the lighter Jim and Bill was lying improperly and in an unseaworthy manner moored and made fast at the foot of 150th street and Hudson river, Manhattan.

The berth was an open one, and, as the steamer Alexander Hamilton passed down the river as was customary at half speed, some swells were caused, and as a result of the improper mooring of the Jim and Bill she and some of her moorings were damaged.

The Jim and Bill was moored bow-up river, about 45 feet offshore, by means of two A-frame outriggers, the outshore ends of which were made fast to the forward and after towing bitts on the starboard or inshore side, the four inshore ends of which were made fast to steel outriggers on shore. In addition, it was anchored bow and stern, had two breast lines of wire and two of manila rope, two fore and aft spring lines of wire cable, and two bow spring lines of manila rope from each end. In addition, there was used in mooring the Jim and Bill one 200-pound mushroom anchor, approximately 150 feet south of said lighter, in line with the fore and aft center line of said lighter, with its line made fast to a cleat on center of stern or south end of said lighter, on the north or bow end of said lighter, a new 5-inch manila line was run from the bow bitt and made fast around the bottoms of four light piles set in the river about 90 feet from the bow in lieu of an anchor, and a 200-pound mushroom anchor, about 200 feet offshore, about opposite the port side amidships, with its line running to the after port towing bitt.

The Jim and Bill, moored as she was, would move up and down when swells came in from the river, but the whole resistance caused by the outriggers would come on the boat, coming first on the forward bitt and then on the after bitt, if the swell be moving north, and this would tend to loosen the bitts, especially if they left a little slack in the bolts down at the post. There is a great deal more strain, under the same conditions, on the bitts and on the sides of the lighter as a result of the manner of rigging the lighter than there would be if there were no stiff, rigid outriggers.

There would have been no damage from swells from the Hamilton if the Jim and Bill had been moored as most boats are moored along the river. The Jim and Bill was an old boat, and, while she was tight before the happening herein referred to, she was not strong enough to endure the unusual strain placed upon her by being moored with the outriggers.

The tide was ebb, and there were probably one hundred boats anchored in the im-

mediate vicinity at the time in question, but none was damaged.

From the facts as found, the steamer Alexander Hamilton was not at fault.

There is a grave question as to jurisdiction. The Jim and Bill had been a box barge of the open scow type, with no motive power and no rudder. Her deck house had been removed, and she was intended to be used as a gasoline float for the purpose of supplying oil and gas to motorboats on the river.

█ She was afloat and had been moored in the position described for approximately three weeks, but had not yet been converted into a gasoline float, as her pumps were not installed, nor the platform from the shore which gave access to the lighter until after the happening herein referred to, and she could have been used as a vessel. This, it seems to me, is sufficient to give this court jurisdiction. The Bart Tully (C. C. A.) 251 F. 856, distinguishes this case from The Hendrick Hudson, Fed. Cas. No. 6,355, 3 Ben. 419; Pile Driver E. O. A. (D. C.) 69 F. 1005; The Big Jim (D. C.) 61 F. 503; Ruddiman v. A Scow Platform (D. C.) 38 F. 158; Cope v. Vallette Dry-Dock Company, 119 U. S. 625, 7 S. Ct. 336, 30 L. Ed. 501; Gas Float Whitton No. 2, 1896 Prob. Div. 42, and Hayford v. Doussony (The Pirate Ship) 32 F. (2d) 605 (C. C. A.), cited by claimant.

█ The libelant cannot, however, impose liability on the steamship by mooring an old boat in a way that imposes on the boat a strain greater than that generally imposed on a boat used for freight or passengers under like conditions. Such a mooring renders the boat unseaworthy, and the steamer, when operated in a reasonably careful and customary manner, is not liable for damage to a boat due to the unseaworthy manner in which she is moored, which would not have been caused to a boat moored in a proper and seaworthy manner.

I find as conclusions of law:

That the libelant has failed to prove by a fair preponderance of the evidence that the steamer Alexander Hamilton was negligently and carelessly navigated, so that she caused unusual swells dangerous to a boat properly moored, or that the lighter Jim and Bill received any damage caused or contributed to by the negligence of the steamer Alexander Hamilton, and the steamer Alexander Hamilton is without fault.

That the damages suffered by the lighter Jim and Bill were caused by the negligence of the libelant or those for whose actions he is responsible, in mooring the Jim and Bill in an improper and unseaworthy manner and subjecting an old boat to a strain so much greater than boats of her character are customarily and reasonably exposed to when moored in a proper and seaworthy manner, and the libelant is solely at fault.

That the claimant is entitled to a decree against the libelant dismissing the libel with costs.

That a decree may be entered in accordance herewith. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.