M. P. RICH. The (BURKE v.). See Cases Nos. 2,161 and 2,162.

## Case No. 9,898.

### The M. R. BRAZOS.

[10 Ben. 435.] [1]

District Court, S. D. New York. May, 1879.

COLLISION — TUG AND BATH HOUSE — ENGINE CATCHING ON THE CENTRE—JURISDICTION.

1. The steam-tug B., having three barges in tow, went into the cove at the foot of 65th street, East river, to take up a fourth. In coming in, her engine caught on the centre and she drifted towards the rocks. The pilot, as soon as possible, turned her head out of the cove and went ahead, but before he could get out, she was carried by the tide so near the point as to run against the corner of a floating bath house which was moored to the shore there: *Held*, that the bath house was not a vessel;

2. The admiralty had jurisdiction of a libel filed by the owner of the bath house against the tug, to recover the damages caused by the tug; [Cited in Snyder v. Floating Dry Dock, 22 Fed. 686; Homer Ramsdell Transp. Co. v. Compagnie Generale Transatlantique, 63 Fed. 848.]

3. The tug was not in fault for the engine's catching on the centre, or in her navigation otherwise, and the libel must be dismissed.

In admiralty.

D. McMahon, for libelant.

W. R. Beebe, for claimant

CHOATE, District Judge. This is a libel for collision between the steam-tug M. R. Brazos and a floating bath house belonging to the libellant, August Brown, which was at the time of the collision, moored to the westerly shore of the East river, near the foot of East 65th street. Between 56th and 64th there is a cove, into which the tug had gone with three loaded boats in tow for the purpose of taking in tow a fourth boat or barge, loaded with manure, at a pier near the foot of East 63rd street. She was bound from New York to Saybrook, Conn. At 64th street, the upper or northerly end of the cove,

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

the shore sets out boldly into the river, forming a high point of rocks, against which the flood tide sets with considerable force. The libelant's bath house was moored to the rocky shore about sixty feet above this point, and it projected out into the river considerably further than this rocky point. It was framed with timbers and was about forty-nine feet long and thirty feet wide, and except for a short time at low tide it was wholly floating in the water. At low tide a small portion of it next the shore rested on the rocks under the surface of the water, the rest of it being afloat. It was secured to the shore by poles and chains, so arranged as to allow it to rise and fall with the tide, one end of the chains being fastened securely to the structure itself and the other end being attached to pins inserted in holes drilled in the rocks. Access to it from the shore was had over a gangway of planks. It was placed there by permission of the department of docks of the city of New York, for the purpose of being used as a public bath, but it lay outside the bulkhead line as established at that time. It was so constructed that the tide flowed freely through it. It was kept afloat in part by the buoyancy of its materials and in part by barrels underneath some of its outer timbers.

The collision happened about ten o'clock on Sunday morning, August 31st, 1873. The day was warm and fine and the river at the time was free from other vessels. The tug having gone into the cove for this fourth boat and come out without taking her up and proceeding on her voyage up the East river, came so near to the bath house that the barge, on her port side, struck against the outer and lower corner of the bath house, injuring and shattering it so that it fell apart and was carried off by the tide. The libel alleges that the collision was caused by the negligence of those in charge of the tug.

It is objected by the claimant, the owner of the tug, that the court has no jurisdiction of the cause, on the ground that the injury complained of was not on the water but on the land, within the meaning of the rule governing the jurisdiction of the admiralty courts in actions for marine torts. It is clear that the libelant's bath house, though described in his libel as a "vessel," was not a vessel constructed or used or intended to be used as an instrument of commerce or navigation. The test, however, of the jurisdiction of the courts of admiralty in respect to torts, is whether the place of the alleged injury was "on the water." The Maud Webster [Case No. 9,302], and cases cited. This structure cannot be said to have become a part of the land. Its connection with the shore was for a temporary purpose. The testimony shows that it was a movable structure, moored in this place in tide waters, for use as a bath house during the summer months, the design of the owner being to disconnect it from the shore in the autumn and

float it away to some more suitable place for laying it up during the winter. The mode of its attachment to the shore was adapted to this purpose and was such that it could be readily disconnected. I do not see that the case is any different from what it would be if the bath house had been moored at anchor in the same place or out in the middle of the river. The case is clearly distinguishable from the case of The Maud Webster, cited above, in which it was held that the place where the derrick which was injured stood had become a part of the land. The libelant, therefore, has the right to have the case determined on the merits.

The defence set up by the tug is that the injury was the result of inevitable accident— that while the tug was properly and for a lawful purpose and without negligence attempting to back up to the pier in the cove to take in tow the boat loaded with manure, her engine, without fault on the part of the engineer, caught on the centre; that she used all proper diligence in prying the engine off the centre, and that in the situation in which she then was, having been drifted by the tide while thus helpless towards the rocks on the point at 64th street, the only proper and prudent course to avoid going ashore was to head out into the river and go ahead with all speed; that she did this with all possible expedition and thereby succeeded in avoiding the point, but the tide still setting her up towards the corner of the bath house after she cleared the point, she had not gained sufficient headway to clear the bath house, and that without fault on her part, the boat on her port side struck the corner of the bath house and did the injury complained of. This defence is, I think, made out. The testimony in this case shows very clearly that the catching of the engine on the centre is an accident which cannot, by the exercise of any degree of watchfulness be anticipated or by any precaution prevented, and that it does not show any defect in the machinery or want of care in the engineer. Up to the time the engine so caught on the centre the management of the tug was without fault. She had a perfect right to come into this cove to take the boat in tow. She lay there off the pier a short time, drifting slowly up with the tide, stopped, or almost stopped, and hailed those in charge of the boat to be taken up. Her attempted movement by backing to take up the boat, which was in an eddy setting down along the shore on the inside of the cove, was proper. The drifting of the boat towards the point while her engine was caught made it impossible for her to resume this movement. Her pilot immediately did what was obviously the only safe thing for him to do, turn her head to the river and go ahead as fast as he could. By doing so he cleared the point only by about fifteen feet. The evidence shows that when he thus started to go ahead he put his wheel a-port so as to head her out into the river; that she graz-ed so near the rocks at the point that it was necessary to put the wheel amidships in passing in order to throw the stern of the tow off from the rocks, and that when the stem of the tow had got by the bath house he attempted to keep the stern of the tow from coming in contact with the bath house by putting his wheel to starboard in order to throw the stern off. It was a very close thing between the force of the tide setting up the river and the headway of the tug driving her out into the river, and the force of the tide proved too strong. But the real cause of the collision was the catching of the engine on the centre and the consequent drifting of the tug and tow into a position where, with the exercise of all reasonable care and skill, it was impossible to avoid coming in contact with the bath house. There was no fault in the construction or motive power of the tug. She had no larger tow than she could properly manage. Her pilot was familiar with the navigation of the river; he knew the set and force of the tide and the nature of the navigation he had to encounter in going into this cove. It is true that he had not actually been to this pier before, but that is immaterial, as he was familiar by frequent observation in navigating the river with the tides at this place, and there was neither negligence in going into the pier nor want of skill in endeavoring to extricate the tow from the situation in which she was unavoidably placed while there. I have given no weight to the suggestion that the bath house was an obstruction to navigation. I do not perceive that, if that were so, the tug could justify her own negligence in running against it. Libel dismissed with costs.