## BERTON v. TIETJEN & LANG DRY DOCK CO.

### (District Court, D. New Jersey. January 13, 1915.)

1. REMOVAL OF CAUSES ☞19—ADMIRALTY AND MARITIME JURISDICTION—EMPLOYER'S LIABILITY ACT—ACTION IN PERSONAM.

Const. art. 3, § 2, provides that the judicial power of the federal courts is extended to all cases of admiralty and maritime jurisdiction, but Judicial Code, § 24 (Act March 3, 1911, c. 231, 36 Stat. 1091 [Comp. St. 1913, § 991]), declares that the federal District Courts shall have original jurisdiction of all civil cases of admiralty and maritime jurisdiction, saving to suitors in all cases the rights to common-law remedy where the common law is competent to give it. Held, that an action purely in personam by a machinist, working upon a vessel floated upon defendant's dry dock, to recover compensation for injury under the New Jersey Workmen's Compensation Act (P. L. 1911, p. 134), not being an action for tort or based on defendant's fault, was not within the exclusive jurisdiction of a federal court sitting in admiralty, but was an action of which the state courts had at least concurrent jurisdiction, and, such courts having first acquired jurisdiction, the action was not removable as one arising

under the Laws of the United States, and of admiralty and maritime jurisdiction.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53; Dec. Dig. ☞19.]

2. ADMIRALTY ☞10—FEDERAL COURTS—JURISDICTION.

Admiralty courts will take jurisdiction of a contract only when the substance of the whole contract is maritime.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 131–149, 185–190; Dec. Dig. ☞10.]

3. ADMIRALTY ☞2—JURISDICTION—STATUTES—CONSTRUCTION.

Judicial Code, § 24, provides that the District Courts of the United States shall have original jurisdiction in all civil cases of admiralty and maritime jurisdiction, saving to suitors in all cases the right of common-law remedy where the common law is competent to give it. *Held*, that such saving clause does not embrace a proceedings in rem as used in the admiralty court; such proceeding not being a remedy afforded by the common law, though it does embrace proceedings in personam in which an attachment or writ of sequestration may issue against the vessel.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 18–28; Dec. Dig. ☞2.]

4. COURTS ☞492—JURISDICTION—CONCURRENT JURISDICTION—ATTACHMENT.

Where federal and state courts have concurrent jurisdiction, the one first acquiring jurisdiction will be permitted to retain it.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1345; Dec. Dig. ☞492.]

5. SHIPPING ☞204—LIMITATION OF LIABILITY—"VESSEL."

Rev. St. § 3 (Comp. St. 1913, § 3), defines the word "vessel" to include every description of water craft or other artificial contrivances used, or capable of being used, as transportation on water, and sections 4283–4285 (Comp. St. 1913, §§ 8021–8023) provides for limitation of liability in favor of the owners of any ship or vessel, etc. *Held*, that a dry dock used for the repair of vessels, though capable of being floated and towed from place to place, was not a "vessel" within such provisions.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 639, 640; Dec. Dig. ☞204.

For other definitions, see Words and Phrases, First and Second Series, Vessel.]

At Law. Action by John Berton against the Tietjen & Lang Dry Dock Company, removed from the state court. On petition of Tietjen & Lang Dry Dock Company for limitation of defendant's liability, and petition of John Berton to remand. The former denied; the latter granted.

J. Emil Walscheid, of Town of Union, N. J., for plaintiff.

Foley & Martin, of New York City, for defendant.

RELLSTAB, District Judge. This suit was originally brought in the Hudson county court of common pleas, in the state of New Jersey, by John Berton, an employé of the defendant, Tietjen & Lang Dry Dock Company. His petition in that court was filed under the act of the New Jersey state Legislature approved April 4, 1911, entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employé in the course of employment, establishing an elective schedule of compensation, and regulating procedure for the determination of liability and compensation thereunder" (N.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. P. L. 1911, p. 134), called the "Workmen's Compensation Act." Gregutis v. Waclark Wire Works (N. J. E. & A.) 92 Atl. 354. In such petition plaintiff alleged, inter alia, that he was a resident of the state of New Jersey; that the defendant was a corporation of said state; that on the 27th of January, 1912, and for a long time prior thereto, he was in its employ, working as a machinist; that on such date, and while so in the defendant's employ, working upon a vessel then in the defendant's dry dock, situate at the foot of Seventeenth street, in the city of Hoboken, state of New Jersey, he fell from a scaffolding upon which he had been directed to stand while so working and received severe injuries; that in consequence thereof he was forced to cease working; and that he "will be unable to follow his occupation of machinist or any other occupation for the next five years at least, and there is a strong probability that for the remainder of his life he will be unable to do any work of any kind whatsoever." The plaintiff further alleged that under the legislation referred to he was entitled to recover compensation from the defendant for such injuries, but that it disputed "its liability to pay him such compensation and refuses to do so." He concluded with a prayer that an order be made directing the defendant to pay him the money to which he claimed he was entitled under such legislation.

The defendant removed the suit into this court upon the ground:

"That said suit is one arising under the laws of the United States, and is one of admiralty and maritime jurisdiction, in this, to wit, that the injury alleged to have been suffered by the said John Berton in his said petition was sustained by him on a floating dry dock, while said dry dock was floating in a navigable stream, to wit, the Hudson river. That said dry dock was not fastened to the shore, but was afloat on said river."

Subsequently the defendant filed, in this court, its answer to the plaintiff's said petition, in which, after denying that the plaintiff was injured on the premises owned by it, it alleged that he, while in its employ, was "on a certain floating dry dock then in the waters of the Hudson river, off the foot of Seventeenth street in the city of Hoboken."

Upon the filing of such answer, the plaintiff presented his petition praying this court to remand said cause to the state court upon the ground that it was not one "arising under the laws of the United States or a case of admiralty and maritime jurisdiction, and that the injuries sustained by him were not sustained while in a floating dry dock in a navigable river, but that the injuries were sustained by him in a floating dry dock which was a permanent part of the city of Hoboken and state of New Jersey."

Thereupon the defendant presented its petition, alleging, in part, that it is a corporation of the state of New Jersey engaged in operating dry docks in the Hudson river at Hoboken, in the state of New Jersey, in the repairing of steamers and other maritime craft; that at the time the plaintiff alleged he was injured he was engaged in working on a steam tug which was on defendant's dry dock being repaired; that said dry dock was floating in the Hudson river, and not moored or made fast to the land in any way; that it is now moored to the land at Weehawken, N. J., and within the jurisdiction of the United States District

Court for the District of New Jersey; that the injuries received by the plaintiff while engaged in working for it were caused without knowledge, fault, or negligence on its part, but entirely by the negligence and carelessness of the plaintiff; that defendant believed other suits might be brought against it or its said dry dock by other parties claiming to have suffered loss, etc.; that the defendant desired to claim the benefit of sections 4283, 4284, and 4285 of the Revised Statutes of the United States (Comp. St. 1913, §§ 8021–8023); and prayed that Berton be restrained from prosecuting his said action except in this proceeding, and against said dry dock; and, in the event that this court should adjudge that the petitioner and such dry dock were liable for any injury to Berton, that such liability be limited to the amount of the value of its interest in said dry dock, her equipment, and pending freight.

To this the plaintiff answered, reasserting much that had been alleged by him in his said petitions, concluding with a prayer that defendant's "petition and libel may be dismissed as not being within the jurisdiction of this court," and, if that be denied, that defendant be required to pay him the compensation provided by said act of the state Legislature, and, if that be denied, that it be adjudged that the loss to Berton was incurred with the privity and knowledge of the owner of the dry dock and by its carelessness and negligence, that the prayer of the defendant to condemn the dry dock be denied, and that it be required to pay him the loss and damage suffered by reason of said injuries.

Of the testimony taken by the parties on the issues thus raised, only that relating to the jurisdiction will be considered, as it is clear that this suit must be remanded to the state court. This testimony shows that both plaintiff and defendant are citizens of the state of New Jersey; that the plaintiff, at the time of the alleged injury, and for some time prior thereto, was in the employ of the defendant, working as a machinist; that the defendant was the owner and operator of a floating dry dock, the frame of which is similar to a scow; that it was engaged in the repair of vessels which were floated upon such dock and by it raised clear of the water, the better to permit of the making of needed repairs; that such dock cannot be propelled by its own power, and, while capable of floating and being towed about on the surface of the water, was not built for the carrying of either passengers or freight; and that its movements, whether on the surface, or when being lowered or raised in the water, were for the purpose of raising vessels clear of the water, that they might be repaired; that at the time of the alleged injury the plaintiff was at work for the defendant as a machinist upon a vessel which had been floated upon the defendant's dry dock and then raised clear of the water for the purpose of being repaired; that the dry dock at that time was afloat, being held in position by her mooring post, a couple of feet away from the pier, by chocks so placed as to permit such dock not only to rise and fall with the tide, but to be moved laterally, and to be easily freed from her mooring log when desired.

[1] By article 3, § 2, of the United States Constitution, the judicial power of the United States Courts is extended "to all cases of ad-

miralty and maritime jurisdiction." The Constitution left it to Congress to say which of the United States courts should exercise such jurisdiction and to fix the scope thereof. In the exercise of such discretion Congress has frequently declared itself as to such jurisdiction, its latest expression being found in section 24 of the "act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911 (36 Stat. L. 1087, c. 231 [Comp. St. 1913, § 991 (3)]), which took effect January 1, 1912. By this section the District Courts are declared to "have original jurisdiction * * * of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." This is substantially the same as declared by Congress in the Judiciary Act Sept. 24, 1789 (1 Stat. L. 73, 76, c. 20), from which section 24 is mediately derived; the saving clause relating to the common-law remedy being exactly the same. If the plaintiff's right to recover depended upon the defendants being in fault, the court of admiralty might have taken jurisdiction, had its aid been invoked in the first instance, as the testimony establishes that the cause of the injury occurred wholly on navigable waters. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, and cases cited therein. The plaintiff, however, selected another forum in which to bring his suit, so that, except admiralty have exclusive jurisdiction over such cause of action, the cause must be remanded unless such jurisdiction be saved by the defendant's invoking the limited liability provisions of the United States statutes.

The plaintiff's right to recover for such injuries, however, as stated in his petition in the state court, or as fixed by that part of the state legislation invoked by him, does not rest upon the defendant's fault as the cause of such injuries. The effect of this statute is the incorporation into the relation of employer and employé a new right in the latter and a new obligation upon the former, and in furtherance thereof it provides compensation to workmen who have sustained injuries in their employment. The scheme of this Workmen's Compensation Act is twofold—compensation through action at law, or by legislative schedule. While the act permits an election by either party (Nitram Co. v. Court of Common Pleas, 84 N. J. Law, 243, 245, 86 Atl. 435), the latter scheme is declared in force unless the parties have taken the prescribed steps to put the other into operation (Sexton v. Newark District Telegraph Co., 84 N. J. Law, 85, 86 Atl. 451). In the case of the former, the employer's liability arises only in case he has been negligent—actually or legally imputed—and the employé had not been willfully negligent at the time of such injury. In the case of the latter, the employer's liability is fixed, without his being in fault, where the employé is injured by "accident arising out of and in the course of his employment * * * in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury." P. L. N. J. 1911, p. 134, 136, § 2, par. 7. Bateman Mfg. Co. v. Smith, 85 N. J. Law, 409, 411, 89 Atl. 979.

In the case at bar the plaintiff seeks the compensation fixed by the legislative schedule, and his right to such compensation, as already observed, does not depend upon the defendant's being at fault. The

nature of the obligation thus imposed upon the employer is purely economic and sociological. It bears no relation whatever to the modern common-law theory underlying the redress of private wrongs. The award to the injured employé is based on his being injured while in the course of his employment, and in consequence of an accident arising out of such employment, and not on the fault of his employer (American Radiator Co. v. Rogge [N. J.] 92 Atl. 85, 87), and the amount thereof is ascertained on the basis of his wages, regardless of whether such award be commensurate with the injury suffered. A suit to recover such compensation cannot be said to be one founded or sounding in tort. The legislative act referred to expressly declares that every contract of hiring, made subsequently to the time the original act went into effect, shall be presumed to have been made with reference to such obligation; and, by an amendment to such act, passed the same year (N. J. P. L. 1911, p. 763), all contracts of hiring made prior to such time are presumed to continue subject to such obligation unless either party, prior to the accident, shall have taken the prescribed steps to make such presumption inapplicable.

Neither the pleadings, nor the testimony taken on the issues raised thereby, alleges or shows that any such steps were taken in the present case, and the result is that this obligation thus legislatively thrust upon the employer is a part of ·the contract of hiring. Gregutis v. Waclark Wire Works, supra. Such an obligation was unknown to either the common or maritime law, as they existed at the adoption of our federal Constitution or the passage of the first Judiciary Act; and, while critically considered, it might be more appropriately placed in a class by itself than be classified as contractual, yet this legislative classification must govern. American Radiator Co. v. Rogge, supra. The Legislature in this respect has done nothing more than that which the courts have found it necessary to do, viz., annex to certain contractual relationships obligations not expressly undertaken. The law of implied contracts furnishes instances of such annexed obligations in matters resting solely in contract. The plaintiff was not a seaman or one engaged to carry out a maritime enterprise. He was a machinist, and his relation to the vessel in the repairing of which he was engaged was but incidental to his general employment as a machinist. The contract of hiring was essentially of a common-law nature, and what was done by the plaintiff at the time of his injury was merely an incident to his employment. Schuede v. Zenith S. S. Co. (D. C.) 216 Fed. 566, cited by the defendant, is not in point. In that case the plaintiff was a wheelsman upon a vessel owned by the defendant. He was a seaman, and the contract of hiring was maritime. The action in the state court, removed into the federal court on the ground of diversity of citizenship, was founded upon the fault of the defendant; it being alleged that the injury was due "to defective rigging and to an improvident order." In the state court the plaintiff would have had the benefit of the Ohio Employer's Liability Act (Gen. Code, § 6244 et seq.), which abolished several of the defenses available to the employer in the common-law action of tort some of which defenses were enforceable also in the maritime law. This legislation did not place upon the employer an obligation to compensate his employé in case of his being injured in the course of

employment, regardless of any fault of the employer. To recover under that act it was still necessary to show that the injury was due to the employer's fault. The cause of action was therefore founded in tort, and not in contract. That case is different from the one at bar in these important particulars: The contractual relation between the parties was maritime; the action was predicated upon the employer's fault; and the removal proceedings were founded in diversity of citizenship which, when invoked, was exclusive. These differences of grounds underlying jurisdiction and cause of action are radical and put the Ohio case in a different class from that to which the case at bar belongs. Neither the contract of hiring in the instant case, nor the obligation annexed to it by the New Jersey statute, is maritime (Insurance Co. v. Dunham, 78 U. S. [11 Wall.] 1, 20 L. Ed. 90), and neither is subject to the exclusive control of the maritime law.

[2] It is only when the substance of the whole contract is maritime that a court of admiralty takes jurisdiction. Plummer v. Webb, Fed. Cas. No. 11,233, 19 Fed. Cas. 891–894; The Orleans v. Phœbus, 36 U. S. (11 Pet.) 175, 9 L. Ed. 677; Richard v. Hogarth (Dist. N. J.) 94 Fed. 684, 685; The Pennsylvania, 154 Fed. 9, 83 C. C. A. 139. No different conclusion could be reached, should the asserted liability be held to lie in tort. Assuming that a tort could exist without fault—commission or omission and disregarding for present purposes this legislative pronouncement that the obligation is contractual—it is clear, even if the remedy provided for its enforcement is one that can be administered in the courts of admiralty, that it falls within the saving clause of paragraph 3 of section 24 of the Judicial Code, viz., "saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it." "Common-law remedy," as here used, is not to be restricted to such forms of remedy as were known in the common-law courts when the Judiciary Act of 1789 was passed. Section 9 of such act, after investing the District Courts with exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, added the saving clause quoted. Without such saving clause the District Courts would have exclusive jurisdiction in all such matters, but the adding of such clause manifests both a legislative recognition that there were causes of action cognizable in courts of admiralty over which the courts administering the common law could exercise jurisdiction, and a distinct purpose that, inasmuch as for the redress of such causes of action there were concurrent remedies, the suitor should have his choice of remedies, and the omission of the word "exclusive" in the subsequent legislation dealing with the admiralty jurisdiction emphasizes such purpose.

[3] What are concurrent remedies at the common law may not always be of ready determination, but since The Moses Taylor, 71 U. S. (4 Wall.) 411, 18 L. Ed. 397, it is settled that this saving clause does not embrace a proceeding in rem as used in the admiralty courts, as that is not a remedy afforded by the common law. This line of demarcation between proceedings which hold "owners responsible for damages committed by their vessel, without reference to the particular agent by whose negligence the injury was committed," and which might be brought in either the admiralty or common-law courts, at the suitor's

option, and those in rem in the maritime law which deem the vessel the offending thing, regardless of the responsibility of the owner or operator thereof, and which were cognizable only in the admiralty courts (Sherlock v. Alling, Adm., 93 U. S. 99, 108, 23 L. Ed. 819), has ever been observed, and the question whether a suitor has a common-law remedy, as well as one in admiralty, is practically limited to actions in personam. Concerning such actions, the authorities have justified the bringing in the state courts of suits in equity as well as at law, and have not confined them to such forms of remedies as were existing at the time the first judiciary act was passed. They have also sanctioned suits such as the changing civil conditions and relationships have induced legislative bodies to authorize, so long as they remained germane to rights recognized at the common law, ancient or modern, and did not encroach upon what were matters purely maritime.

In Leon v. Galceran, 78 U. S. (11 Wall.) 185, 191 (20 L. Ed. 74) it was said, with reference to this saving clause, that:

"The common law is as competent as the admiralty to give a remedy in all cases where the suit is in personam against the owner of the property."

And in Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 648, 20 Sup. Ct. 824, 829 (44 L. Ed. 921) it was said:

"The true distinction between such proceedings as are, and such as are not, invasions of the exclusive admiralty jurisdiction, is this: If the cause of action be one cognizable in admiralty, and the suit be in rem against the thing itself, though a monition be also issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction, or if the suit be in personam against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute * * * of a common-law remedy."

The following kinds of suits in personam, held to be properly brought in the state courts, illustrate the comprehensive meaning given to the phrase "common-law remedy," contained in such saving clause: Suits to recover mariners' wages, even though accompanied by writ of sequestration or process of attachment to hold the vessel to answer any judgment that may be recovered in the cause (Leon v. Galceran, supra); suits by shippers or consignee, free from fault, to recover for loss of or damage to cargo (The Atlas, 93 U. S. 302, 23 L. Ed. 863); suits brought under state statutes authorizing the recovery of damages to compensate for the pecuniary loss suffered by the widow and next of kin of one who died in consequence of the wrongful act of another, though the wrongful act were committed on navigable waters, and such a recovery could not be had at common law (Steamboat Co. v. Chace, 83 U. S. [16 Wall.] 522, 21 L. Ed. 369; Sherlock v. Alling, Adm., supra; The Lotta [D. C.] 150 Fed. 219); and a bill in equity to enforce a common-law lien dependent upon possession, though it be upon a raft for towage services (Knapp, Stout & Co. v. McCaffery, supra).

[4] It is within the power of Congress at any time to give the courts of admiralty exclusive jurisdiction over all matters of controversy arising upon navigable waters; but, so long as concurrent common-law remedies are saved, it is essential, in order to avoid undue friction be-

tween these two ancient and formerly conflicting jurisdictions, and to obtain a speedy, economical, and harmonious administration of justice, that in matters of concurrent jurisdiction that court which first takes cognizance should proceed without interference to a finality. Such a course rests not alone on comity, but on necessity. Covell v. Heyman, 111 U. S. 176, 182, 4 Sup. Ct. 355, 28 L. Ed. 390; Westfeldt v. North Carolina Mining Co., 166 Fed. 706, 710, 92 C. C. A. 378. This suit must therefore be remanded, unless the appeal to the limited liability statutes requires that federal jurisdiction should be retained as the only court competent to afford such relief; for it is clear, however this statutory obligation imposed upon employers may be classified—contractual, delictual, or sociological—that it is not purely maritime in its nature. If not maritime, on that ground the suit is not removable; and, if maritime, it not being exclusively so as it is enforceable by a suit in personam cognizable in a court exercising common-law remedy, it is not removable, because the suitor had a choice of concurrent remedies, and his choice controlled.

[5] Sections 4283, 4284, and 4285, R. S., which embrace the limited liability provisions invoked, are derived from the act of March 3, 1851 (9 Stat. 635), which was "An act to limit the liability of shipowners, and for other purposes." This act was passed after the decision in New Jersey Steam Navigation Co. v. Merchants' Bank, 47 U. S. (6 How.) 344, 12 L. Ed. 465 (1848), and perhaps because of it, which held that such navigation company was liable for failure to observe ordinary care in navigating a vessel which was totally lost by fire, even though it had a contract with the skipper casting upon him the risk of loss. The limitation of liability thus enacted, however, applied only to "owners of any ship or vessel," and the sections of the Revised Statutes appealed to limit the liability to "the owner of any vessel."

The statutory definition given to the word "vessel" includes "every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." R. S. § 3 (Comp. St. 1913, § 3).

Is a dry dock a vessel within the meaning of any of these statutory provisions? A stage designed to be used in connection with painting or repairing the side of a vessel would not become such merely because it was capable of floating on the water, though it were used by workmen in thus painting and repairing, while the same was on the water, rising and falling with the tide, or because it could be moved alongside or around such vessel, and while being moved was capable of holding persons and property. In what respect can a dry dock be distinguished from such a stage? True, it would be larger, and in addition to being capable of holding persons and property, and being used in moving them about, it would also be capable of being sunk to allow the water to come in, that a vessel might be floated thereon, and thereafter, upon being emptied of its water, of rising with the tide, lifting the vessel with it. It is, however, not designed or intended as a means of transportation, and merely that it can for temporary purposes be used for transporting either persons or freight does not make it a vessel within the definition of section 3 or the limited liability sections (4283-4289) of the Revised Statutes.

In Salvor Wrecking Co. v. Sectional Dock Co., 21 Fed. Cas. 281, Fed. Cas. No. 12,273, it was held (syl.):

"Services rendered in raising the sectional floating docks of the respondent are not the subject of salvage compensation, nor are they maritime, so as to give the admiralty jurisdiction of a suit to recover the value of such services."

In this case Judge Dillon, at page 283 of 21 Fed. Cas., said:

"The admiralty jurisdiction and the peculiar liens, rights, and remedies which the admiralty recognizes and enforces, spring out of the movable character of the vessels and vehicles which are the instruments of navigation, commerce, and trade. None of the reasons upon which this jurisdiction is founded, and these rights and remedies are given, apply to the stationary docks here in question; and my best judgment is that the controversy between these parties belongs to the courts of common law, and not to the court of admiralty."

In Snyder v. A Floating Dry-Dock (1884) 22 Fed. 685, this court (Nixon, J.) held that a floating dry dock with a floating pump was not a vessel constructed or used for the business of navigation or commerce.

In Cope v. Vallette Dry Dock Co. (1887) 119 U. S. 625, 627, 628, 7 Sup. Ct. 336, 337 (30 L. Ed. 501) it was held that a floating dry dock was not a subject of salvage service. In the course of the opinion Mr. Justice Bradley said:

"A fixed structure, such as this dry dock is, not used for the purpose of navigation, is not a subject of salvage service, any more than is a wharf or a warehouse when projecting into or upon the water. The fact that it floats on the water does not make it a ship or vessel, and no structure that is not a ship or vessel is a subject of salvage. A ferry bridge is generally a floating structure, hinged or chained to a wharf. This might be the subject of salvage as well as a dry dock. A sailor's floating bethel, or meeting house, moored to a wharf, and kept in place by a paling of surrounding piles, is in the same category. It can hardly be contended that such a structure is susceptible of salvage service. A ship or vessel, used for navigation and commerce, though lying at a wharf, and temporarily made fast thereto, as well as her furniture and cargo, are maritime subjects, and are capable of receiving salvage service."

In The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73, this classification of floating dry docks with floating wharves, hinged ferry bridges, etc., is referred to approvingly.

In Ruddiman v. A Scow Platform (D. C.) 38 Fed. 158, it was held (syl.):

"A floating structure. designed to be moored alongside a wharf, so that carts containing refuse to be dumped into boats can be driven over it from the wharf. is not a vessel within the meaning of the maritime law, and no lien for wharfage attaches to it under that law."

In this case, Judge Brown, at pages 158 and 159 of 38 Fed., said:

"To admit of a maritime lien, the scow structure must be a 'vessel,' within the meaning of the maritime law. I am of opinion that the structure in question, though afloat, is not such a vessel, because it was not designed or used for the purpose of navigation, nor engaged in the uses of commerce, nor in the transportation of persons or cargo; and to be a 'vessel' it must meet some of these tests. * * * This structure, though, as I have said, capable of being moved, was designated to be comparatively permanent. By

its nature, build, design, and use, it belonged, I think, to that considerable class of cases, such as dry docks, floating saloons, bathhouses, floating bethels, floating boathouses, and floating bridges, all of which have been held not to be vessels within the maritime law"—citing cases.

To the same effect is The San Cristobal (D. C.) 215 Fed. 615.

Of the cases cited by counsel as opposed to the view that a floating dry dock is not a vessel within the purview of the limited liability provisions, Simpson v. The Ceres, 22 Fed. Cas. 172, Fed. Cas. No. 12,-881; Shewan v. New England Nav. Co. (D. C.) 155 Fed. 860; Seabrook v. Raft, etc. (D. C.) 40 Fed. 596; The Mackinaw (D. C.) 165 Fed. 351; The M. R. Brazos, 17 Fed. Cas. 951, Fed. Cas. No. 9,898; The F. & P. M. No. 2 (D. C.) 33 Fed. 511—are not in point. These are cases of alleged maritime tort committed on navigable waters, in which character of cases it is not the person or thing injured or occasioning the injury that furnishes the test of jurisdiction, but the locality—navigable waters—where the tort was committed.

The Public Bath No. 13 (D. C.) 61 Fed. 692, was held to have been built on boats designed and used in navigation and transportation.

The Sunbeam, 195 Fed. 468, 115 C. C. A. 370, was a scow employed in carrying stone, though at the time of injury it was used as a derrick boat in unloading vessels.

On this finding of facts these water craft were vessels within the statutory definition referred to.

In The Chas. Barnes Co. v. One Dredge Boat (D. C.) 169 Fed. 895, the court held that the boat was intended for and used in transporting a permanent cargo (engines, machinery, etc., to pump out coal barges), and that no distinction could be made between a permanent and temporary cargo as applied to "transportation," within such statutory definition.

In Re Sanford Ross (D. C.) 196 Fed. 921, a barge with a piledriver aboard, and moved from place to place by tugs, was held to be a vessel and entitled to the limited liability provisions. This case, however, on appeal (204 Fed. 248, 112 C. C. A. 516), was reversed on the ground that, even if such craft were a vessel within the meaning of such provisions—the court finding it unnecessary to pass judgment on that point —the owner was privy to the fault which occasioned the injury.

In The Public Bath and Barnes Co. v. Dredge Boat Cases, Cope v. Vallette Dry Dock Co. was distinguished; in the former that the bath boat was not permanently moored, and in the latter that the dry dock was "not intended for transportation of anything." With reference to the distinction made in The Public Bath Case: In the Vallette Dry Dock Case the phrase "permanently moored," though appearing in the headnote and used in the opinion, can hardly be said to have been employed as controlling the distinction between what was and what was not a vessel, within the meaning of the maritime law. The mooring of that dry dock, as affecting permanency, was unsubstantially different from the method employed in the case at bar. In both cases, the docks were not only capable of floating, but must float while serving as dry docks, and the mooring was for no other purpose than to hold the docks comparatively stationary while in service. Permanency as a fixity was neither in the mind of the judge writing such opinion, nor

practicable in actual service, as both perpendicular and lateral movement, in some degree, was necessary in rendering such docking service. "Permanently," as there used, seemingly, was in the sense of "remaining or continuing indefinitely," one of the uses of such word, and it was undoubtedly intended to distinguish between a craft designed and used to move from place to place in the course of navigation and transportation of persons and goods, and one which to answer the purpose of construction must be comparatively stationary. And as qualifying "mooring," it was used to distinguish between that temporary mooring of ships or vessels falling within the first class, while they were being unloaded, loaded, or repaired, etc., preparatory to navigation in commerce, and that mooring of a structure falling within the other class, which remains indefinitely at a given place, and whose aid to navigation consists exclusively in the work done at such place. It is not necessary, however, in the present case, to distinguish such cases cited by the defendant, either from the Vallette Dry Dock Case or from the one at bar. The present case is controlled by the Vallette Dry Dock Case and The Robert W. Parsons, supra, which directly hold that not mere ability to float constitutes a vessel within the maritime law, but that the purpose of being used, or the actual use in navigation as a means of transportation, are the essential requirements. In The Robert W. Parsons, supra, Mr. Justice Brown, 191 U. S. at page 30, 24 Sup. Ct. 12, 48 L. Ed. 73, said that "only the purpose for which the craft was constructed, and the business in which it is engaged," are the determining factors whether such craft was a ship or vessel; and at page 34 of 191 U. S., at page 13 of 24 Sup. Ct. (48 L. Ed. 73), that "there is no doubt of the proposition that a dry dock itself is not a subject of salvage service or of admiralty jurisdiction, because it is not used for the purpose of navigation." No exception to this criterion was taken in the dissenting opinion rendered in that case, but, on the contrary, it was concurred in; Mr. Justice Brewer, at page 40 of 191 U. S., at page 16 of 24 Sup. Ct. (48 L. Ed. 73), saying:

"That a dry dock is to be considered as land in the maritime law seems to be clear from the decision of this court in Cope v. Vallette Dry Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501, in which it was held that a dry dock was not a subject of salvage service."

As, in my opinion, the dry dock under consideration is not a vessel within the meaning of the limited liability provisions, it is unnecessary to consider whether the plaintiff's suit could have been properly removed into this court, or whether he could be compelled to submit his cause of action to this court under such provisions, as his suit is the only one pending or threatened against the owner of such dock for any cause of action growing out of its use or for any cause of action having any relation thereto, even though the dry dock could be held to be within such provisions. On this point, see The Lotta (D. C.) 150 Fed. 219, 223, and cases cited.

The suit removed into this court, however classified, assuming it to be cognizable in a court of admiralty, not being one over which such court has exclusive jurisdiction, and the parties being citizens of the

same state, and the limited liability provisions of the United States statutes not being applicable, such suit must be remanded to the state court whence it came.

The plaintiff is entitled to a decree to such effect, with his costs to be taxed.