### DEMER v. PACIFIC S. S. CO. et al.

(District Court, W. D. Washington, N. D. May 28, 1921.)

#### No. 5856.

Removal of causes ☜102—If federal court's jurisdiction is doubtful, and that of the state court clear, the cause should be remanded.

Since it is doubtful whether the United States District Court has jurisdiction over an action for injuries received on a vessel, resulting from the alleged unseaworthy condition of the vessel, as a suit under the maritime law, and therefore arising under the laws of the United States, in view of Comp. St. §§ 1584, 1585, and of the language used by the Supreme Court in some of the cases decided by it, while there is no doubt under the decisions of the Supreme Court of the state as to the state's jurisdiction to afford the advantage of its common-law procedure in such a case, a motion to remand an action for such injuries, brought in the state court and removed to the United States District Court, will be granted.

At Law. Action by Walter J. Demer against the Pacific Steamship Company and another, begun in the state court and removed to the

United States District Court.   On motion to remand.   Motion granted on reargument.

Walter S. Fulton and Elmer E. Todd, both of Seattle, Wash., for plaintiff.

B. S. Grosscup, and W. C. Morrow, both of Tacoma, Wash., and W. A. Johnson, of Seattle, Wash., for defendant Pacific S. S. Co.

Jones, Riddell & Brackett, of Seattle, Wash., for defendant Schmittling.

CUSHMAN, District Judge.   A reargument has been had in this case upon the representation that the court fell into error in holding that a federal question was involved in an action where plaintiff sues, alleging that he was injured on a vessel, the injury resulting from her alleged unseaworthy condition, and that the question was an important one going to the court's jurisdiction.   It is contended that the court probably erred, because certain decided cases were not pressed upon the court's attention.

The following reasons influenced the court in reaching its conclusion:   Plaintiff's injury was suffered in waters of the state of Washington.   Section 1 of the Washington Workmen's Compensation Act provides:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work *is inconsistent with modern industrial conditions.   In practice it proves to be economically unwise and unfair.   Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public.   The remedy of the workman has been uncertain, slow and inadequate.* Injuries in such works, formerly occasional, have become frequent and inevitable.   The welfare of the state depends upon its industries, and even more upon the welfare of its wageworker.   The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; *and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this* act provided." Laws 1911, pp. 345, 346.

The repeal by the state of the common-law rights and remedies, and the conferring upon the District Court of the Circuit Court jurisdiction by the Judicial Code, open up a vista through which it may appear that a suit upon a tort suffered by one in the service of the ship upon navigable waters, not only arises under the Constitution and laws of the United States, but is now removable to the District Court, for the decisions of a state court as to its own laws are binding upon the federal court, and the state of Washington, in Sandanger v. Carlisle Packing Co., 192 Pac. 1005, has reached the conclusion that, in such a suit, it is not administering a state law, but a United States law—the maritime law.

No one claims that Congress has the power to impose the burden on the state of trying common-law actions based upon rights not recognized

by the state law. If the body of the admiralty law, adopted by the Constitution, thereby became something else then a law of the United States, then this case does not arise under the Constitution and the laws of the United States; otherwise, it does. There are two sets of laws in the United States: Laws of the United States and state laws. There are no others. This suit is not brought under the law of the state. If not brought under the laws of the United States, what is it brought under?

While the courts have refrained from deciding that such a case was one arising under the Constitution and laws of the United States, it appears to this court that it is hardly less significant that the courts have refrained from saying that it did not so arise. Why should the trial by jury in the District Court of maritime rights be limited to cases of diversity of citizenship? It is understandable why that should be if the maritime law is a part of the common law of the state; but, if it ever was, it has ceased to be a part of the law of the state of Washington.

Should the state court be burdened with determining rights and obligations growing out of federal law, which the federal courts will not entertain—that is, where there is no diversity of citizenship, even though the requisite amount is involved—particularly after the state has determined that these laws are wholly inadequate? There is no express enactment, law, or controlling decision denying the jurisdiction. When resort must be had to construction in order to determine the intent, the reason for ascribing a particular intent becomes important. No reason has been advanced why either the Constitutional Convention or Congress should have intended to treat the maritime law in this matter any different than any other law of the United States.

Granting that there are judicial expressions at variance with what is said herein, the safest guide to a law is to find its purpose, and the surest guide to its purpose is to find the reason for its enactment. The reason for saving the common-law remedy was that the common law was competent to afford to certain suitors relief. When the common law ceases to be competent to afford relief, as the Washington Legislature has declared, the reason ceases, and when the reason ceases, those rules that rest to such a large extent upon judicial decisions, because of the reason that has ceased to exist, are no longer safe guides, and new rules are necessary, even though they are based upon court decisions rather than statutes.

We now have this condition in suits at common law to enforce a maritime right: One litigant has a right to a jury trial in the courts of the United States, that is in case of the requisite diversity of citizenship, and without such diversity he has not. There would be nothing incongruous about this, if the suits arose under the state law, for it would be the state's duty to furnish the forum to administer its own laws. But, arising under the maritime law, after the repudiation of the law of master and servant, as to compensation for injury to the servant, by the state of Washington, the law would then appear not to be the perfection of logic, for, should the state court in any case decline

the jurisdiction, where there was diversity of citizenship, the party complaining of a maritime tort could sue in the federal court at common law, but would have no right of suit in any court in the absence of diversity of citizenship.

If the suitor has more confidence in the jury than in the admiralty, and if he prefers what he conceives to be an advantage at common law over the more expeditious proceeding in admiralty, and should bring his suit at common law in the state court, why should not the defendant, if he hopes to secure more expeditiously the advantage of that uniformity of rule which the courts have ever declared to be the reason for giving the United States courts jurisdiction in admiralty, remove the cause to the District Court, rather than carry it through the state courts to the Supreme Court of the United States?

In case of injury upon navigable waters while engaged in a maritime service to the ship, an injury caused by its unseaworthiness, the injured person was given concurrent remedies. There is no question but that he might sue in admiralty or in the common-law courts of the state. In the admiralty he would have full compensation for his injuries, and also if he sued at common law; but the common-law court did not borrow from the admiralty the remedy of full compensation. To the contrary, the admiralty borrowed that right from the common law. While the duty of the owner in the admiralty to furnish a seaworthy ship, properly manned and equipped, may in some respects be narrower than a safe place in which to work and suitable appliances required of the master at common law for the servant's protection (McLanahan v. Universal Ins. Co., 1 Pet. [26 U. S.] 170, at 183 and 184, 7 L. Ed. 98; Olson v. Oregon Coal '& Nav. Co., 104 Fed. 574, 44 C. C. A. 51; The Governor Ames, 55 Fed. 327; The Santa Barbara [C. C. A.] 263 Fed. 369; John A. Roebling's Sons Co. of N. Y. v. Erickson [C. C. A.] 261 Fed. 986), yet the reason for both requirements being, in general, the same, the former may be said to fall fairly within the latter. Therefore practically, if not theoretically, what the common-law courts of the state have been applying in these cases, prior to the enactment of the compensation laws, abolishing the common-law rights and remedies, has been common-law remedies based upon common-law rights, and what the admiralty has been doing is the adding to the common-law rights of a safe place to work and suitable appliances (which rights it borrowed from the common law), as well as the remedy of full compensation (a remedy which it also borrowed from the common law), the lien upon the offending vessel. The latter was solely the contribution of the maritime law. The borrowed right and borrowed remedy have so long been established as part of the maritime law as to at least, broadly speaking, now form a part of the law of the United States, as Judge Killits says in Schuede v. Zenith S. S. Co. (D. C.) 216 Fed. 566, as much so as though they were covered by the statutes of the United States.

To say that what the state courts have been doing in such cases before the adoption of Compensation Acts was the administration of the maritime law under common-law procedure, such as trial by jury and

attachment of property, prior to judgment, is to lose sight of the fact that the common law originally furnished the right of a safe place to work and safe appliances with which to work, and also furnished the remedy of full compensation in such cases. It had this established right and this remedy, and they were borrowed from the common law by the admiralty. The common-law courts of the state did not have to borrow them back again under the saving clause. They already had them.

It is true that, where this borrowed right and remedy have so long been a part of the maritime law, they would not be destroyed therein when the state compensation laws wiped out both the right and the remedy at common law; such state action would have no more effect upon the settled maritime law in that respect than would the repeal of the original maritime laws of Oleron and Rhodes. Aside from the relief afforded by the compensation laws, all that is left now to the suitor is the maritime rights and remedies. The saving clause in such statutes is without effect.

The rights and remedies are now purely maritime, although they may have been, in great part, borrowed, as pointed out, from the common law. The state still has the common-law courts, and those courts, having jurisdiction of persons, are not forbidden, generally speaking, to try the differences between any and all suitors; but, when the state courts try such a case as the present, after the compensation laws have repealed the common-law remedies and rights, they are hearing maritime rights and administering maritime remedies as preserved by the Constitution, laws, and decisions of the United States. The Supreme Court of the state of Washington has apparently reached this conclusion. Sandanger v. Carlisle Packing Co., supra.

If the foregoing conclusion is sound, why is a suit arising out of the maritime law of the United States to be treated any differently than one arising out of any other law of the United States? The jurisdiction of the courts, federal and state, may be concurrent in suits in personam, but the rights and remedies have become purely federal and maritime, save, perhaps, in the matter of procedure.

There would appear to be a more reasonable explanation than that the jurisdiction in admiralty, preserved by the saving clause, was a compromise growing out of a fight between jealous jurisdictions. The ship against which the lien was given by the admiralty, while in the suitor's jurisdiction, might have sailed far away from the jurisdiction of her owners, and the lien afforded by the admiralty be the only practical remedy a suitor would have. While, upon another occasion, the ship departing the jurisdiction where the obligation arose, the jurisdiction might be had in personam against the owner, and again a suit might lie in the state court at common law, and be preferable to the suitor because of the fact that the federal court was at a considerably greater distance from the parties and the witnesses than the state court, and litigating in the former would therefore necessitate greater expense, and possibly delay.

It is true that the rule laid down by the Supreme Court of this state, in construing its Workmen's Compensation Law, as abolishing the

right of action of the injured shore servant, leaves open this common-law jurisdiction of the state court for a redress of a seaman injured through a maritime tort. Therefore, where there is diversity of citizenship and the requisite amount involved, the action can be removed to, or brought in, the federal court. As the saving clause of the act simply and only "leaves open" the "common-law jurisdiction" of state courts over torts committed at sea (The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264), it then follows that, should a state abolish the common-law right of action for a tort upon its waters, there would, in the absence of diversity of citizenship, be no right of action at common law saved to the suitor in the federal court.

The language of Justice Hughes, in The Hamilton, supra, in speaking of it—saying that all the Judiciary Act does is to "leave open the door"—certainly does not imply that there is any obligation on the part of the state to keep the door of the court open for the administration of federal law. The original and subsequent Judiciary Acts provided:

"The District Courts shall also have cognizance, concurrent with the courts of the several states."

No such language appears in the Judicial Code. This shows a full realization on the part of Congress that it could not keep open the state courts for the determination of federal rights. The state of Washington has undertaken to administer the maritime law of the United States. Sandanger v. Carlisle Packing Co., 192 Pac. 1005. The suitor has not yet been deprived of a forum for the determination of his maritime rights at common law.

If part of the states should hold, in construing the compensation laws, as the state of Washington has, that the Compensation Act does not apply to tort actions under maritime law between master and servant where the injuries are inflicted upon navigable waters, and still other states should decide, as held in Berton v. Tietjen & Lang Dry Dock Co. (D. C.) 219 Fed. 763, that the compensation laws did apply to certain torts where the injury occurred upon navigable waters, and still others should hold—which is not at all improbable, as it appears to this court—that the Legislature having condemned both the common-law rights and remedies as inadequate, such action on its part constitutes the declaration of a public policy which renders recognition by its courts of such condemned rights and remedies unworthy, and justifies them in refusing as a matter of comity to administer such condemned and discarded rights and remedies, even though they have been adopted and preserved by the admiralty law—we would then have a checkerboard jurisdiction in the federal courts sitting in the various states; that is, if there is no power in the federal courts, other than the common law of the state to administer remedies (common-law remedies) for torts committed on navigable waters. If this is to be the result, it should give us pause.

Section 991, Comp. Stats., provides for two classes of cases: Cases where there is diversity of citizenship and those where there is a federal question, in each of which there must be over $3,000 involved to give jurisdiction; and other particular classes of cases arising under

the Constitution and laws, in which it is not required that any minimum amount be involved. Included in the latter is the admiralty and maritime jurisdiction, in which a common law remedy is expressly saved to the suitor, where it is competent. From this arrangement, it certainly does not appear but that the court's decision, in a case of the latter character, depends upon the construction of a law of the United States, the maritime law. This renders applicable the rule laid down in the following: Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Patton v. Brady, Executrix, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713.

The fact that it arises under such law, and depends for its correct decision upon the interpretation and construction of the maritime law, appears from plaintiff's complaint, wherein it is averred that the injury occurred on shipboard, where the plaintiff was assisting in the loading of the vessel. This renders applicable the rule laid down in Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85; Postal Tel. Cable Co. v. Alabama, 155 U. S. 482, 484, 15 Sup. Ct. 192, 39 L. Ed. 231; Ore. Short Line v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869, 40 L. Ed. 1048. There is the same necessity for applying the rules for the settlement of the maritime law that there is in determining any other federal law.

"The purpose of the creation of the right to remove a case from a state to a federal court was to enable a defendant to have claims against him under the federal Constitution or federal statutes adjudicated, in the first instance, by a federal tribunal." 34 Cyc. p. 1215.

In Berton v. Tietjen & Lang Dry Dock Co. (D. C.) 219 Fed. 763, at page 770, where the cause was remanded, while the suit was one on navigable waters, it was a suit by a repairman, a machinist, for injuries sustained while at work upon the vessel in dry dock. While there was a question regarding the safety of the place to work, there was no question in the case of the seaworthiness of the vessel, and the services being rendered, while for the benefit of the vessel, were not of a strictly maritime nature. The repair of the vessel would be in the nature of preparing the ship to perform its function as an instrument of commerce, rather than help it in the performance of such a function.

It has been argued that the Judiciary Act, in using the words "arising out of the Constitution and laws of the United States," used those words in a restricted sense, and that the word "laws" refers to statutes of Congress alone. An argument that proves too much defeats itself.

Section 24 of the Judicial Code, subsection 1, which defines the general jurisdiction of the District Court, including suits of a civil nature at common law or in equity, where there is diversity of citizenship, or where there is a federal question in both of which there must be the necessary amount in controversy to give jurisdiction, concludes with this language:

"Provided, however, that the foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section."

Then follows a description of suits, proceedings, actions, causes, claims and cases of some 24 different characters, among which are "civil causes of admiralty and maritime jurisdiction." If these latter causes were not considered as arising under the Constitution and laws of the United States, there would appear to be no reason for the above-quoted proviso.

The jurisdiction to entertain a libel in personam is most naturally ascribed to the fact that it arose under the Constitution and laws of the United States. No reason is suggested, or suggests itself, why, if a libel may be entertained in personam, a common-law action is not a competent remedy, saved to the suitor upon the same cause of action.

Section 12 of the original Judiciary Act of September 24, 1789, the same being section 648, R. S. (section 1584, Comp. Stats.), provided:

"Trials of issues of fact in the Circuit Courts shall be by jury, except in cases of equity, admiralty and maritime jurisdiction."

The act of February 16, 1875 (section 1585, Comp. St.), provides for a jury in the Circuit Court in deciding a cause of admiralty and maritime jurisdiction, such jury to be of not less than 5 or more than 12 persons, "to whom shall be submitted the issues of fact in such cause, under the direction of the court, as in cases of common law," discloses a view on the part of Congress that it was appropriate to have such issues of fact tried by a jury. It is true that it appears there may be some question about whether the above act is still in effect.

If it was appropriate on an appeal in an admiralty case from the District to the Circuit Court to have a jury, although not a common-law jury, determine the facts, where is the justification for contending that, on a removal of a common-law action based on a maritime tort from the state court to the District Court, the common-law jury, which the suitor would have had in the state court, is not to be secured to him in the District Court? It certainly would be in cases where the basis of the removal was diversity of citizenship. Why should it not be where the cause is to be removed on account of a federal question?

The Judicial Code, by which the Circuit Court was abolished, by section 24, subsection 3, changed the language of the original section of the Judiciary Act, section 9, as already changed by subsection 8, section 563, R. S., by omitting the word "exclusive" in describing the admiralty and maritime jurisdiction of the District Court. This, as well as the saving clause, shows, as does the explanatory expression in subsection 8, "except in the particular cases where jurisdiction of such causes and seizures is given to the Circuit Court," that what was intended to be excluded was the Circuit Court jurisdiction, and not the jurisdiction of the courts of the state at common law.

It has been contended that the fact that this question has never before arisen in the more than 100 years that the District Court has had jurisdiction of suits in admiralty is significant. This argument appears formidable, but, when examined, it is not as convincing as it sounds. There was no opportunity for the question arising prior to the adoption of the Judicial Code in 1911, abolishing the Circuit Court. The reason is that original exclusive jurisdiction in admiralty was conferred

upon the District Court; the Circuit Court only having appellate jurisdiction. The District Court was given no general jurisdiction at common law, only having the latter jurisdiction conferred upon it in a few particular classes of cases.

Section 11 of the Judiciary Act gave the Circuit Court jurisdiction in equity and the common-law jurisdiction, generally; that is, subject to general limitations as to amount in controversy and the like, where the United States was plaintiff, an alien was a party, or where there was diversity of citizenship. Section 12 provided for the removal from the state court to the Circuit Court where the suit was against an alien, or by a citizen of one state against a citizen of another state. No jurisdiction, either original or derivative by removal, was conferred by this act upon either the District or Circuit Court generally over a cause that arose under the Constitution or laws of the United States.

Between the time of the adoption of the Judiciary Act and the close of the Civil War, particular statutes had provided for the removal to the Circuit Court of certain special classes of cases (sections 639–647, R. S.; 34 Cyc. 1216); but there was still no general removal act, nor was there prior to the Act of March 3, 1887 (24 Stat. 552). By this act jurisdiction was first conferred on the Circuit Court, concurrent with the courts of the states, of "all suits of a civil nature, at common law or in equity, * * * arising under the Constitution or laws of the United States," and by section 2 of that act it was provided that suits of that character, "of which the Circuit Courts of the United States are given original jurisdiction by the preceding section, * * *" may be removed by the defendant or defendants therein to the Circuit Courts of the United States.

As the Circuit Court had no original jurisdiction, under the admiralty and maritime law, a cause arising thereunder could not be removed. Under the foregoing terms of section 2, of course, there was no removal from the state court to the District Court, which did have such original jurisdiction. By the Judicial Code, taking effect January 1, 1912, both the original jurisdiction of the Circuit Court and its jurisdiction upon removal were transferred to, or merged in, the District Court.

Steamboat Co. v. Chace, 83 U. S. (16 Wall.) 522, 21 L. Ed. 369, was a suit on account of a tort in a collision on navigable waters, and was decided in 1872, long before the first general removal statute and the conferring of jurisdiction on the Circuit Court because of what has now come to be known as a federal question was involved. The following language occurs in that decision:

"Difficulties, it must be conceded, will attend the solution of the question, but it is not necessary to decide it in the present case, as the jurisdiction of the state court may be supported, whether such a suit may or may not be maintained in the admiralty courts. Sufficient has already been remarked to show that the state courts have jurisdiction if the admiralty courts have no jurisdiction, and a few observations will serve to show that the jurisdiction of the state courts is equally undeniable if it is determined that the case is within the jurisdiction of the admiralty courts. Much discussion of that topic cannot be necessary, as several decisions of this court have established that rule as applicable in all cases where the action in the state court is in form a

common-law action against the person, without any of the ingredients of a proceeding in rem to enforce a maritime lien. Where the suit is in rem against the thing, the original jurisdiction is exclusive in the District Courts, as provided in the ninth section of the Judiciary Act; but when the suit is in personam against the owner, the party seeking redress may proceed by libel in the District Court, or he may, at his election, proceed in an action at law, either in the Circuit Court if he and the defendant are citizens of different states, or in a state court as in other cases of actions cognizable in the state and federal courts exercising jurisdiction in common-law cases, as provided in the eleventh section of the Judiciary Act. He may have an action at law, in the case supposed, either in the Circuit Court or in a state court, because the common law in such a case is competent to give him a remedy, and wherever the common law in such a case is competent to give a party a remedy, the right to such a remedy is reserved and secured to suitors by the saving clause contained in the ninth section of the Judiciary Act. * * * Questions of the kind cannot arise in suits in rem to enforce maritime liens, as the common law is not competent to give such a remedy, and the jurisdiction of the admiralty courts in such cases is exclusive. Such a question can only arise in personal suits where the remedy, in the two jurisdictions, is without any substantial difference. Examined carefully, it is evident that Congress intended by that provision to allow the party to seek redress in the admiralty if he saw fit to do so, but not to make it compulsory in any case where the common law is competent to give him a remedy. Properly construed, a party under that provision may proceed in rem in the admiralty, if a maritime lien arises, or he may bring a suit in personam in the same jurisdiction, or he may elect not to go into admiralty at all, and may resort to his common-law remedy in the state courts, or in the Circuit Courts of the United States if he can make proper parties to give the Circuit Court jurisdiction of his case." 83 U. S. (16 Wall.) at pages 532–534, 21 L. Ed. 369.

A portion of the language used may not have been necessary to the decision; that is, in determining that the state court of Rhode Island had common-law jurisdiction to try the cause, it was not absolutely necessary to determine in what cases the courts of the United States would also have jurisdiction.

The foregoing case was one of the authorities upon which chief reliance was placed upon the reargument. Another was Garcia y Leon v. Galceran, 11 Wall. (78 U. S.) 185, 20 L. Ed. 74, in which the language used is not materially different from that above quoted; while the decision in American Ins. Co. v. Canter, 1 Pet. (26 U. S.) 511, 7 L. Ed. 242, was controlled by reason of the fact that the case arose in Florida while it was a territory, and therefore at a time when the authority of Congress was supreme. Another case relied upon was Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8 Sup. Ct. 811, 31 L. Ed. 629. This was a case regarding what was claimed to be a nuisance, the obstruction of a navigable stream. In such a cause, the reason for maintaining that, under the limited powers delegated to the general government, it was necessary that there be a particular statute penalizing the act of which complaint is made, is apparent. There had, at the time of this decision, been no such legislation by Congress as to take all control from the state of such matters as the authorizing of a bridge over a navigable stream.

In view of the Sixth Amendment, the proviso at the close of subsection 1 of section 991, Comp. Stats., and the saving clause in subsection 3 of said section, if this cause is held to be removable, it would seem to logically follow that a suitor, suing on account of a maritime

tort at common law in the District Court for an amount where the value in controversy alleged should exceed $20, could demand a jury as a matter of right. Such a radical departure from the established practice is alone sufficient to cast a doubt upon the right of removal.

While not convinced that the views we have expressed herein are erroneous, yet the language used in Steamboat Co. v. Chace, supra, and the language of Justice McReynolds regarding the Supreme Court's not having "delimited * * * the precise effect" of the saving clause upon the jurisdiction (Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171); the language of Justice Holmes in the case of The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, in saying that the effect of the saving clause was simply to leave open the common-law jurisdiction of the state courts over torts committed at sea; the holding in Berton v. Tietjen & Lang Dry Dock Co. (D. C.) 219 Fed. 763, and sections 1584 and 1585, Comp. Stats., with no precedent directly in point upholding the jurisdiction, leaves the question, at least, doubtful, in spite of the decision in Hanrahan v. Pacific Transport Co., Ltd. (C. C. A.) 262 Fed. 951, in which certiorari was denied (252 U. S. 579, 40 Sup. Ct. 345, 64 L. Ed. 726). In the latter case it does not appear whether jurisdiction was invoked on account of diversity of citizenship or not.

There being no doubt, under the Washington Supreme Court's decision in Sandanger v. Carlisle Packing Co., 192 Pac. 1005, as to the state's jurisdiction to afford to suitors the advantage of its common-law procedure, and the jurisdiction of this court being not at all clear, it is the court's duty to remand the cause. Simkins' A Federal Equity Suit, p. 803; Groel v. United Electric Co., 132 Fed. 265, and cases cited; Concord Coal Co. v. Haley (C. C.) 76 Fed. 882; Hutcheson v. Bigbee (C. C.) 56 Fed. 329; Boatmen's Bank v. Fritzlen, 135 Fed. 650, 68 C. C. A. 288; Wrightsville Hdwe. Co. v. Colwell (C. C.) 180 Fed. 589; Western Union Tel. Co. v. Louisville & N. R. Co. (D. C.) 201 Fed. 932; Drainage Dist. v. Chicago, M. & St. P. R. Co. (D. C.) 198 Fed. 264.

Motion to remand will be granted.